[Civ. No. 4284. First Appellate District, Division Two.—November 14, 1922.]

ISAAC UPHAM COMPANY (a Corporation), Respondent, v. UNITED STATES FIDELITY & GUARANTY COMPANY (a Corporation), Appellant.

[1] INDEMNITY INSURANCE — CONSTRUCTION OF POLICIES — EVIDENCE — DISCOVERY AND NOTICE OF LOSS—RECOVERY.—In this action on an indemnity insurance policy, there having been no evidence of any kind introduced that showed, or tended to show, that the second policy issued by defendant to plaintiff continued the first issued, the trial court should have instructed the jury that the two policies were independent contracts, and not submitted to the jury the question as to whether the parties intended that the second policy should continue the first; and the first policy issued having insured the plaintiff for the period of one year and covered losses "occurring during the term of this bond, or any continuations thereof, and discovered and notified to the surety within six months after the expiration or cancellation of this bond," plaintiff was not entitled to recover for a loss not discovered and noticed to defendant within that time.

[2] ID.—AMOUNT OF LOSS—EVIDENCE.—In such action, the evidence having shown that the plaintiff was a corporation, that it transacted business for itself and for another corporation which owned

Effect of false representations of insured on validity of policy of indemnity insurance, notes, 8 **Ann. Cas.** 608; **Ann. Cas.** 1915D, 732.

real estate which was income property, that the business trans-
actions of the two corporations were kept on the books of the
plaintiff, that the stock of the two corporations was owned in
equal parts by two brothers, that during the period covered by
the litigation a certain person was employed as cashier, credit-man
and general accountant for the plaintiff, that defendant's bond
undertook to reimburse the plaintiff, the employer, for any pe-
cuniary loss sustained by reason of the fraud or dishonesty of
its said employee, and that on certain specified dates during said
period said employee embezzled certain specified sums, such evi-
dence was sufficient to show that the plaintiff sustained a loss of
the aggregate of said sums, whether the moneys were received
for either corporation.

[3] ID.—OPENING STATEMENT OF COUNSEL—ADMONITION TO JURY—
PREJUDICIAL ERROR.—In such action, no prejudicial error was com-
mitted by the attorney for the plaintiff by remarking in his open-
ing statement that they would show that the employee who com-
mitted the embezzlement "when he came to our employ . . . was
indebted to his former employer, which we did not learn until
after the termination of his employment with us, . . . on a short-
age," the trial court having forthwith admonished the jury that
the attorney for the plaintiff was but making an opening statement
and that the jurors were not to take the same as evidence.

[4] ID.—STATEMENTS IN APPLICATION—WARRANTIES.—Statements con-
tained in an application for insurance are not warranties, where
neither the policy, nor the certification of continuation, contains
any reference thereto.

[5] ID.—FALSE REPRESENTATIONS — DEFENSE—PLEADING—EVIDENCE.—
False representations made by the plaintiff in and at the time of
its application for insurance will not constitute a defense to an
action on the policy, where the defendant in its pleadings does
not attempt to plead fraudulent representations, nor a rescission
of its contract, nor does it attempt to introduce evidence along
those lines.

[6] ID.—NEGLIGENCE OF INSURED—WHEN SURETY EXONERATED.—If the
insured does any act in violation of the terms of its policy and
thus produces a loss, the insured cannot recover, whether the act
was negligent or otherwise; but, on the other hand, if the act of
the insured is not covered by the terms of the policy, under section
2629 of the Civil Code the insurance company is not exonerated.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.  E. P. Shortall, Judge.
Modified and affirmed.

The facts are stated in the opinion of the court.

Frank J. Mahoney and Thomas, Beedy & Lanagan for Appellant.

Lent & Humphrey for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant on an indemnity insurance policy. The plaintiff had judgment and the defendant has appealed under section 953a of the Code of Civil Procedure.

In pleading its case the plaintiff set forth its claims in two separate counts. In the first count it pleaded certain facts and sought to recover the sum of $2,000. In the second count it pleaded certain other facts and sought to recover an additional $11,003.44. During the period that the defendant carried insurance for the plaintiff such insurance was evidenced by a policy dated January 12, 1917; a policy dated December 19, 1917, and a certificate of continuation dated the seventh day of January, 1919. [1] The plaintiff contended in the trial court, and contends in this court, that all of said papers constituted but one policy. If this were so it would be entitled to recover on the first count. If, on the other hand, the policy dated January 12, 1917, is a separate and independent contract, then the plaintiff was not entitled to recover on the first count pleaded in this complaint. The loss pleaded in the first count was an item of $2,000, which the plaintiff's agent embezzled on December 31, 1917, one of the dates covered by the first policy. That policy by its terms insured the plaintiff from the eighth day of January, 1917, to the eighth day of January, 1918, and covered losses "occurring during the term of this bond, or any continuations thereof, and discovered and notified to the surety within six months after the expiration or cancellation of this bond, . . . " No loss whatever was notified to the defendant until the fifteenth day of April, 1919. The policy contained a passage, "This bond may be continued from year to year by the payment of the annual premium to the surety, and the issuance by the surety of its continuation certificate." Other papers in the record show that the practice of the defendant was to issue a new bond or a continuation certificate as might be requested by the insured. No request to the contrary being made, the defendant issued a new bond December

19, 1917, which contains no reference whatever to the first bond and contains no language whatever to the effect that it is a continuation of the first bond. It is patent that the two bonds are independent contracts, and the defalcation of December 31, 1917, may not be recovered because the same was not discovered and noticed to the defendant within the time designated in the bond. The trial court submitted to the jury for its determination the question as to whether the parties intended that the second bond should continue the first bond. The intention of the parties was reduced to writing. It was the duty of the trial court to construe the written instruments and advise the jury as to such construction. There was no evidence of any kind introduced that showed, or tended to show, that the second policy continued the first, or that any recovery could be had under the facts on the first policy.

[2] The appellant contends that there is no evidence to show that the plaintiff sustained a loss of $13,003.44. We think the contention is without merit. The evidence shows that Isaac Upham Company is a corporation, and that the Estate of Isaac Upham is another corporation which owns certain real estate which is income property. Isaac Upham Company transacts the business for itself and for the other corporation, Estate of Isaac Upham. The business transactions of both corporations are kept on the books of the plaintiff. The stock of both corporations is owned in equal parts by two brothers, Isaac O. Upham and Benjamin P. Upham. During the period covered by this litigation H. B. Smith was cashier, creditman and general accountant for the plaintiff. The defendant's bond undertook to reimburse Isaac Upham Company, the employer, for any pecuniary loss sustained by reason of the fraud or dishonesty of its employee, H. B. Smith. The evidence showed that Smith embezzled June 26, 1918, $2,786.62; October 30, 1918, $3,800; January 31, 1919, $3,000; March 24, 1919, $1,415.70. As between the parties to this litigation all of that money was the money of the plaintiff. The bond, by its terms, covered such items whether the moneys were received for either corporation. (*Alabama Fidelity & Casualty Co.* v. *Alabama P. Sav. Bank,* 200 Ala. 337 [76 South. 103, 109].)

[3] The appellant contends that prejudicial error was committed by the attorney for the respondent in making his

opening statement.   The language complained of was, "We
will show you further that when he came to our employ
he was then indebted to his former employer, which we
did not learn until after the termination of his employ-
ment with us, Messrs. Kohler & Chase, on a shortage of ap-
proximately over $500.   Mr. Presley: Now, we will object to
the remarks of counsel and assign them as misconduct and
prejudicial error."   We see no error in this matter.   The
trial court forthwith admonished the jury that the attorney
for the plaintiff was but making an opening statement and
that the jurors were not to take the same as evidence, and
that when the evidence was introduced that the trial court
would definitely rule thereon.   Furthermore, if the word
"shortage" had been omitted we do not understand that
the defendant would contend that such evidence was not
admissible.   (20 C. J. 484; *People* v. *Rowland,* 12 Cal. App.
6, 19 [106 Pac. 428].)   Because, perchance, the indebted-
ness arose by reason of a tort committed by Smith, such
additional fact did not destroy the probative force and
effect of the evidence.   If for any reason the testimony was
admissible, it should have been received at least for the pur-
pose for which it was admissible.   (*Cooney* v. *Glynn,* 157
Cal. 583, 588 [108 Pac. 506]; *People* v. *Rowland,* 12 Cal.
App. 6, 18 [106 Pac. 428].)   While counsel in opening
statements should not, of course, include testimony which
they know will not be received, and state the testimony for
the purpose of prejudicing the jury, it is perfectly clear
from the record before us that the attorney for the plaintiff
was not guilty of any such act.

[4]   In its answer the defendant pleaded that the plain-
tiff had breached certain warranties alleged to have been
contained in the policy.   After the evidence had all been
introduced it appeared that the alleged warranties were
contained in the application for insurance.   Among other
things, questions 12 (a) and 12 (b) called for replies as to
what supervision would be had over the person employed,
H. B. Smith.   The paper ended with this language, "It is
agreed that the above answers are to be taken as conditions
precedent and as the basis for the said bond applied for or
any renewal or continuation of the same, or any other bond
substituted in place thereof, . . . "   Neither one of the poli-
cies, nor the certificate of continuation, contained any ref-

erence whatsoever to the statements contained in the application. Such statements, therefore, are not warranties. "Every express warranty, made at or before the execution of a policy, must be contained in the policy itself, or in another instrument signed by the insured *and referred to in the policy, as making a part of it.*" (Civ. Code, sec. 2605.) That language was quite different under the code as adopted in 1872; it then read: "Every express warranty, made at or before the execution of a policy, must be contained in the policy itself, and another instrument, whether upon the same paper or not, cannot be referred to as making a part of the policy for this purpose, even by agreement of the parties." That language was found too harsh as to the insurance company. "The Code Examiner's Notes from the Draft of an Act to Amend the Civil Code Submitted October 13, 1873," states: "The amendment restores the law as it existed previous to the code. See 2 Parsons on Maritime Law, pp. 51 and 106 (1859) : 1 Phillips on Insurance, sec. 756 (1867)." An examination of the cases cited by those authors does not disclose that prior to the code a statement would be held to be a warranty if the statement was contained in a separate paper not referred to in the policy. The passage above referred to in Phillips on Insurance, was worded by the author as follows: "Any express warranty or condition is always a part of the policy, but, like any other part of an express contract may be written in the margin, or contained in proposals or documents expressly referred to in the policy, and so made a part of it." The cross-reference was inserted in the policies considered by the court in *Young* v. *Pacific Surety Co.,* 137 Cal. 596 [70 Pac. 660], and *Larrimore* v. *United States F. & G. Co.,* 21 Cal. App. 767 [132 Pac. 1050]. That fact does not appear on the face of the decision in each case but it is disclosed by the record in each case. Finally, the case entitled *Employers' L. A. Corp.* v. *Industrial Acc. Com.,* 177 Cal. 771, 776 [171 Pac. 935], is directly in point to the effect that the statements contained in the paper which was not expressly referred to in the policy in the instant case, are not warranties.

[5] As we understand the appellant, it claims that if it be held that the statements made in the application are not warranties, in any event, they are false representations, and

in this connection the appellant also calls attention to other alleged false representations which were made about the same time but are contained in yet other papers not referred to in the policy. To this contention there are many complete answers. The defendant in its pleadings has not attempted to plead fraudulent representations nor a rescission of its contract, nor did it attempt to introduce evidence along those lines. As to contracts generally, it is settled law that the party claiming that he has been defrauded by false representations or concealment has three remedies. (*Field* v. *Austin,* 131 Cal. 379, 382 [63 Pac. 692].) Assuming, without deciding, that the appellant had three remedies as against the policy in suit, it did not plead any one of those three remedies. As we understand the appellant, it is its contention on this branch of the case that the insured did not exercise ordinary care in the supervision of Smith's work, or in the examination of his accounts. In its brief it does not specifically call our attention to the evidence supporting such contention. We have examined the record and we do not find such evidence in the record. Moreover, section 2629 of the Civil Code was enacted to eliminate just such a controversy. That section provides: "An insurer . . . is not exonerated by the negligence of the insured, . . . " [6] If the insured did any act in violation of the terms of its policy and thus produced a loss, the insured could not recover whether the act were negligent or otherwise. On the other hand, if the act of the insured is not covered by the terms of the policy, under the code section the insurance company is not exonerated. (*Waters* v. *Merchants' Louisville Ins. Co.,* 11 Pet. 213, 219 [9 L. Ed. 691, see, also, Rose's U. S. Notes]; *Gates* v. *Madison County Ins. Co.,* 5 N. Y. 469, 478 [55 Am. Dec. 360]; May on Insurance, 2d ed., 614.)

What we have just said answers the next attack made by the appellant. That attack is that the court erred in charging the jury that the negligence of the insured was no defense. The trial court did not commit an error in giving that instruction.

The appellant complains of certain other instructions which the trial court gave or refused to give. Each and all of the instructions so complained about were addressed to the alleged warranties which we have considered above.

The trial court did not err in concluding that the warranties claimed were not proved and it did not err in instructing the jury accordingly.

The verdict of the jury and the judgment based thereon was for the full amount claimed by the plaintiff. As we have shown, that claim included $2,000 more than the plaintiff was entitled to. The judgment should be modified by deducting $2,000 from the principal sum therein mentioned so that the language will read, " . . . the sum of eleven thousand three and 44/100 ($11,003.44) dollars, with interest thereon at the rate of seven (7%) per cent per annum . . . " And as so modified the judgment should stand affirmed. It is so ordered.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 11, 1923.

All the Justices present concurred.