# City Of Middlesboro et al. v. American Surety Co. Of New York.

December 5, 1947.

As Modified on Denial of Rehearing Jan. 20, 1948.

J. S. Forester, Judge.

Henry L. Bryant and Arthur Rhorer for appellants.

Robert P. Hobson and Woodward, Dawson, Hobson & Fulton for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

The City of Middlesboro, joined by others as taxpayers, brought this action against Herndon H. Hutcherson, City Tax Collector, and others, including the appellee, American Surety Company of New York, to re-

cover for shortages and misappropriation of funds in excess of $50,000, which allegedly occurred in Hutcherson's office.

The City of Middlesboro was operating under the commission form of government. The defendant, Hutcherson, was elected as City Tax Collector and Clerk in January 1938 for the ensuing year. He executed bond with appellee, American Surety Company of New York as surety in the sum of $5,000. Hutcherson was re-elected each year for a period of 8 years, and each year the City paid its $60 annual premium as consideration for the execution of the bond, and the bond was renewed.

Appellant seeks to hold the surety liable for $40,-000, or $5,000 for each of the 8 years. In paragraph 2 of its answer the surety pleads in its defense that its liability is limited to $5,000 by reason of the following provision in its bond: "That in no event shall the liability of the surety for any one or more defaults of the principal during any one or more years of this suretyship exceed the amount herein specified."

Appellants filed motion to strike from the answer the allegation of such limitation of liability. This motion was overruled. Appellants then demurred to the second paragraph of the surety's answer, which, likewise, was overruled. From that ruling this appeal is prosecuted.

We are here concerned only with that ruling and not with any of the other ramifications of the suit pending in the Bell Circuit Court.

Appellee takes the position that there was only one bond executed by the surety which continued in force in its entirety as one bond for the 8 year period; that the bond was continued in force by the payment of the annual premiums; and that, consequently, the liability is limited to the sum specified in the bond.

Appellants, on the other hand, contend that the bond was executed for one year, which covered the one year term of the City Tax Collector; that upon the re-election of the City Tax Collector the bond was renewed just as though, or rather instead of, executing a new bond; and that each renewal constituted a new contract.

The court below took the view of appellee, holding that the surety's limitation liability, as provided in the contract above set out, is valid and enforceable.

The question here is whether a bond and its renewals together constitute one single contract or whether each is a contract in itself. There seems to be a distinct conflict of opinion on this point. Some courts have construed renewals of bonds to be separate and distinct contracts, on each of which the surety is liable to the limit set therein for defalcation occurring during the particular term the original bond and each renewal thereof is in force. Other courts have held that the bond and the renewal is a continuing contract which is continued in force by the payment of annual premiums, and that the renewal does not constitute or make a new bond but is simply the act which keeps alive the old bond for an additional period. See 50 Am. Jur., Suretyship, Section 366, and State ex rel. Freeling v. New Amsterdam Casualty Co., 110 Opl. 23, 236 P. 603, 42 A. L. R. 829 and following.

The question, then, whether a bond and the renewals thereof constitute multiple contracts or one continuing contract, thereby affecting the limit of liability of the surety, depends primarily on the facts of the particular case and the contract of suretyship itself.

Having adopted the theory of multiple contracts, appellants cite and rely upon De Jernette v. Fidelity and Casualty Company of New York, 98 Ky. 558, 33 S. W. 828, 829, in support of their position. De Jernette was Sheriff of Breckenridge County. His Deputy, W. J. Ramsy, executed bond with Fidelity and Casualty Company of New York as surety. Only one bond was executed and renewed annually, as in the instant case. The particular question presented grew out of the provision in the bond requiring notice of shortages, but the question of renewal and effect of renewal was considered. It was said: "The period to which it referred was from January 19, 1892, to January 19, 1893. A renewal of the policy constitutes a separate and distinct contract for the period of time covered by such renewal. It is, however, a contract with the same terms and conditions as is evidenced by the bond which is renewed, because the renewal receipt recites that it is re-

newed 'in accordance with the terms of the bond.' In Hartford Fire Insurance Co. v. Walsh, 54 Ill. 164, 5 Am. Rep. 115, the court said: 'A renewal of a policy is, in effect, a new contract of assurance, and, unless otherwise expressed, on the same terms and conditions as were contained in the original policy.' To the same effect is the case of Brady v. Northwestern Insurance Co., 11 Mich. 425. The court said: 'We have no doubt that each renewal of the policy was a new contract. Each was upon a new consideration, and was optional with both parties. At the expiration of the year over which the original policy extended, the obligation of the insured was ended, and it was only by the concurrence of the will of both parties that the obligation could be continued.' Such contracts standing as distinct and separate contracts, the rights of the parties must be determined under them as such.''

Counsel for appellants suggest that pursuant to KRS 62.060 the only character of bond required shall be a covenant from the principal and surety that the principal will faithfully discharge his duties and that there shall be no other obligation in the bond. We cannot agree with counsel in this respect in as much as that section of the statute further provides: ''The bond shall be limited in a definite penal sum, which shall be determined and fixed by the officer or officers whose duty it is to approve the bond.''

This conclusion is made further obvious by the provisions of KRS 62.070, as follows: ''Recovery against the surety shall be limited to the amount of the penalty fixed in the bond, but recovery against the principal shall not be limited by the amount of the penalty fixed in the bond.''

Thus, it will be seen that it is possible for a surety to limit its liability to a specified sum. The courts generally seem to recognize this ability on the part of the insurer so to do. See National Surety Company v. Commonwealth ex rel. Coleman, State Auditor, 253 Ky. 607, 69 S. W. 2d 1007.

In the case of Fidelity & Deposit Co. of Maryland v. Champion Ice Mfg. & Cold Storage Co., 133 Ky. 74, 117 S. W. 393, 397, it was held that the bond and renewal thereof was a continuing contract and limited the

liability to the penal amount fixed in the bond, and held that the surety would not be held responsible for loss exceeding that specified sum. It will be observed, however, in that case that in the original bond, and in each certificate of continuance, it was provided: " 'Provided that the liability of the company as surety for employe to employer shall not exceed the amount above written ($2,500), whether the loss shall occur during the term above mentioned or during any continuation or continuations thereof, or partly during the said term and partly during said continuation or continuations.' "

Also in the case of United States Fidelity & Guaranty Co. v. Citizens' National Bank of Monticello, 147 Ky. 285, 143 S. W. 997, 998, it was held that the original bond and certificate of renewal constitute a continuing contract and that but one recovery may be had. The writer of that opinion undertakes to distinguish that case from the De Jernette case above. He states, in substance, that in the absence of language otherwise used, the bond and four renewal certificates would be governed by the De Jernette case, but states that the facts of that case and the language used show that the parties intended that the bond and the continuation certificates should constitute one continuous contract. True, the original bond was for the term of 12 months but in the original bond this language is used: " 'The company shall, during the term above mentioned or any subsequent renewal of such term, * * * make good and reimburse to the said employer, such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employe in connection with the duties of his office or position, amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term or any renewal thereof, and discovered during said continuance or any renewal thereof or within six months thereafter.' "

Then it will be further noted that continuation certificates were issued as follows: " 'In consideration of the sum of forty-five dollars, the United States Fidelity & Guaranty Company hereby continues in force bond No. 292114 in the sum of fifteen thousand dollars, on behalf of Chas. McConnaghy, in favor of Citizens' Nat'l Bank, Monticello, Ky., for the period beginning the 15th

day of March, 1905, and ending on the 15th day of March, 1906, subject to all the covenants and conditions of said original bond heretofore issued on the 15th day of March, 1904.' ''

Thus, we can readily see that the construction placed upon the bond and renewals, as stated above, must depend upon the state of facts and the language of the contract in each particular case, the terms of the bond being the governing factor.

Let us now look at the facts and circumstances of this particular case. Herndon H. Hutcherson was elected City Tax Collector for a period of one year. Appellee executed bond in the sum of $5,000 as suretyship, and the City of Middlesboro paid the annual premium of $60 in consideration therefor. The bond, among other things provided: "* * * this suretyship to begin January 1, 1938, and to end (a) * * *, or (b) with the date of the retirement of the principal from his said position, or (c) * * * ." Further in the bond is paragraph 3, set out above and relied on by appellee in defense of its limitation of liability. Whether or not that provision, providing "one or more defaults of the Principal during any one or more years" was a stock paragraph inserted in all bonds, we cannot say. In any event that paragraph must be construed as applicable to the suretyship for the year the officer or employee had been elected to serve. There is nothing in this record to show but that the elections were for one year at a time, and no reason to contemplate that it was for a continuing period of more than a year. It cannot be doubted but that at the end of the year the term of the Collector terminated, and that the bond terminated. The City could then have elected another Collector or could re-elect the outgoing one. The second election made the Collector a new employee as if elected for the first time or as much so as if another had been elected. The City then paid its annual $60 premium for bond covering this newly elected Tax Collector, and the bond was renewed. This record does not disclose the nature of renewal certificate or receipt, if any.

Let us suppose for argument that the City of Middlesboro had elected, or chosen, a different Tax Collector each year. This, no doubt, would have necessi-

tated the execution of new, separate, and distinct bonds. It could hardly be convincingly argued that the surety would be liable only on the first bond executed as surety for the first Collector. Or, to put it another way, suppose the City had insured with one company for the first year, with another company for the second year, and so on with a different company each year for 8 years. In the event of a loss, similar to that in the instant case, obviously there could be recovery of $5,000 from each company. Can it then be justifiably argued that if it insures with the one company and renews with the same company its protection is reduced to a total of $5,000 for all the years. In other words, the original premium will buy $5,000 worth of protection for one year, but 8 such premiums, one original and 7 renewals, will buy exactly the same total of protection. Or, to put it another way, if the employee has defaulted to the limit of liability under the original bond during the first year, the second year's renewal premium buys nothing.

The fact that the same Collector was re-elected each year in no way destroys the fact that each premium paid was for the bond for the particular year on which the premium was paid, and, as stated in the De Jernette case above, the bond is a distinct contract, the renewals are separate and distinct contracts, and the liability of the Company for an act committed during a given period must be determined by the terms of the contract in force at the time of its commission. True, subsequent renewal does not extend time for disclosing the wrong and the enforcement of liability therefor, but that question is not here presented.

The obligation of the bond is to make good the loss occurring during its term. The obligation of each renewal is to make good the loss occurring during the renewal term. Each stands upon its separate consideration. We think the bond and the renewals were separate and distinct contracts and established separate and distinct liabilities.

We, therefore, conclude that the court erred in overruling the motion to strike as above stated, and also in not sustaining the demurrer to paragraph 2 of the answer.

Wherefore, the judgment is reversed for proceedings not inconsistent herewith.