In the Matter of Susan Rising, an Infant.

Surrogate's Court, Westchester County, March 17, 1952.

*Robert J. Trainor* for Vauda W. Miller, petitioner.

*Thomas J. McManus* for London & Lancashire Indemnity Company of America, respondent.

*Emmett F. Good* and *Maxleon D. Powell* for Veterans' Administration.

*Jessie E. Rising,* in person, as executrix of William S. Rising, Jr., deceased guardian.

*Joseph F. Gagliardi,* special guardian.

GRIFFITHS, S.    This proceeding is instituted pursuant to the provisions of section 115-a of the Surrogate's Court Act to fix and determine the liability of the respondent London & Lancashire Indemnity Company of America, hereinafter called the Company, as surety upon a general guardian's bond.  The petitioner is successor guardian to the principal, who has since died.

The decree made on the judicial settlement of the accounts of the deceased guardian fixed a surcharge in a sum exceeding the face amount of the bond.  The question presented for determination in this proceeding is whether the liability assumed by the Company is limited to defalcations not exceeding in the aggregate the face amount of the bond or whether its liability is for defalcations not exceeding such amount occurring in *each year* the bond was in force and effect.

Preliminarily the respondent Company moves to strike from the amended petition certain paragraphs thereof on the grounds that the allegations therein contained with reference to the

allocation of the surcharge on an annual basis are " irrelevant, and redundant, sham, libelous, unnecessary and impertinent " pursuant to rule 103 of the Rules of Civil Practice.

The bond in question bearing date January 10, 1946, is in the sum of $1,500 and has no stated period of duration. The condition of the bond is that the named guardian " shall in all things faithfully discharge the trust reposed in him as guardian of the said infant and obey all lawful directions of the Surrogate's Court of the County of Westchester touching the trust; and if he shall, in all respects, render a just and true account of all money and other property received by him and of the application required so to do, by a Court of competent jurisdiction ". One of the challenged paragraphs of the amended petition alleges the payment of annual premiums for the years 1947, 1948, 1949 and 1950, and another purports to allocate the surcharge aggregating $2,237.28 to each of said years according to the date of the omission or act of commission of the deceased guardian upon which the claim for surcharge is based. It is also alleged that the total surcharge thus allocated to any one year for which premiums on the bond were paid do not exceed the face amount of the bond. The respondent Company admits liability to the extent of the face amount of its bond with interest from the date of the decree fixing the surcharge, but vigorously opposes the attempt of petitioner to enlarge its liability in the respect above outlined.

The liability of a surety on a fiduciary bond sounds in contract. (*Matter of Ayvazian,* 157 Misc. 306; *Montgomery Ward & Co.* v. *Fidelity & Deposit Co.,* 162 F. 2d 264; 4 Butler, New York Surrogate Law and Practice, § 3022.) " A contract of guaranty, as all the authorities agree, should receive a reasonable interpretation, according to the intent of the parties as disclosed by the writing, which, in a case of ambiguity, may be read in the light of surrounding circumstances." (*Powers* v. *Clarke,* 127 N. Y. 417, 424.)

While no authority has been cited by counsel and independent research has failed to disclose any determining of the extent of the liability of a surety on a fiduciary bond in the respect here involved, a similar question with respect to employee fidelity bonds has been the subject of extensive litigation particularly in the Federal courts. The decisions of such courts have been collated and commented upon in Michigan Law Review (Vol. 27, p. 442); Temple University Law Quarterly (Vol. 15, p. 174), and Southern California Law Review (Vol. 20, p. 226). (See, also, 6 Couch, Cyclopedia of Insurance Law, § 1374.) Recog-

nizing that the particular provisions of each bond and the wording of a pertinent statute or regulation may be determinative of the intent of the parties, nevertheless an analysis of the decisions of such courts shows that where as here the language of the bond is general and there is no specific provision for termination and renewal, the courts appear to be in disagreement. In one of the more recent decisions by the Federal tribunals, the Court of Appeals for the Second Circuit decided by a divided court that the liability of a surety on a bond of a United States postal employee was cumulative and that consequently the surety was liable for defalcations not exceeding the face amount of the bond each year it was in force and effect. (*United States* v. *American Sur. Co. of New York*, 172 F. 2d 135, affg. 77 F. Supp. 318, certiorari denied, 337 U. S. 930.) In rejecting the rationale of certain decisions of other Federal courts holding that the liability on such bonds is continuous rather than cumulative the court said, at page 139: "The substantial and controlling point is that an annual premium was required and paid in the expectation of the obvious protection which that should afford." (Cf. *Columbia Hosp.* v. *United States Fidelity & Guar. Co.*, 188 F. 2d 654.) The New York courts have had occasion to decide a similar question in two decisions (*Campbell Milk Co.* v. *United States Fidelity & Guar. Co.*, 161 App. Div. 738; *Russeks Fifth Ave.* v. *Ætna Cas. & Sur. Co.*, 239 App. Div. 913). (See, also, *Hawley* v. *United States Fidelity Co.*, 100 App. Div. 12, affd. 184 N. Y. 549.) In the *Campbell Milk Company* case the bond in question was for a stated period and on the anniversary date thereof a continuation certificate was issued for a further one-year period, the premium for such renewal being in the same amount as the original premium. In holding that the surety was liable for defalcations not exceeding the face amount of the bond in *each* of the years it was in force and effect, the court observed that in neither the bond nor the renewal thereof in "express terms or necessary implication is cumulative liability under all inhibited, or aggregate liability under all definitely fixed." (P. 741.) The court concluded, therefore, that cases construing bonds and renewals effectively containing such provisions had no application.

In the *Russeks* case the lower court distinguished the *Campbell Milk Company* case on the ground that the employee bond in question did not purport to cover a specified period of time or to require the issuance of annual renewal certificates. In holding that the liability of the surety was not cumulative and therefore

limited in the aggregate to the face amount of the bond, the court stated that the obligation of the surety appeared to be continuous, regardless of whether or not an annual premium was paid by the plaintiff, until such time as either party " avails itself of the right to terminate the bond ". The court observed that no affirmative action was required to keep the bond in force but that effective steps had to be taken to avoid it, adding that in some respects the bond resembled a life insurance policy in that it was not insurance for a year with the privilege of renewal from year to year by paying annual premiums, but an entire contract of insurance until terminated by some effective action. In adopting such rationale the court agreed with the conclusion of those Federal courts whose decisions were rejected by the Circuit Court of Appeals in *United States* v. *American Sur. Co.* (*supra*).

While judicial pronouncements serve as helpful guides, the intent of the parties to a contract must be determined according to its particular language and in the case of ambiguity in the " light of surrounding circumstances ". (*Powers* v. *Clarke, supra*, p. 424.) The language of the bond in question is in general terms, it has no stated period of duration and contains no express provision for its termination and renewal. Premiums are payable annually. A conclusion, therefore, that the liability of the respondent surety was intended by the parties to be continuous and not cumulative would be in accord with the principles enunciated in the *Russeks* case. Here, however, such conclusion finds further support in the circumstance that the wording of the bond was presumably designed to comply with controlling statutory requirements. Section 180 of the Surrogate's Court Act prescribes that the amount of the bond to be furnished by a general guardian shall be " not less than the value of the personal property, and of the rents and profits of the real property, and of the annual income receivable by him from any funds of which the general guardian will not have possession ". The statute confers upon the Surrogate discretion, however, to limit the period for the computation of the rents and profits of the real property or the annual income from any funds not in the possession of the guardian, to a term of three years. Unless the Surrogate exercises his discretion to reduce the period to a term of three years, the amount of the bond required to be furnished by a general guardian is, therefore, the aggregate of the value of personal property together with the anticipated rents and profits of real property and the annual income receivable by the general guardian from any funds of which

he will not have possession, during the entire minority of the infant. It follows that the liability of a surety upon a contract of guaranty written in compliance with said statute extends to defalcations of the guardian with respect to all funds derived from personal property, rents and profits of real property, and income from personal property not in his possession, regardless of the time of their receipt. The liability necessarily continues indefinitely until the principal and his surety are discharged in a manner prescribed by law or the surety is released pursuant to the pertinent provisions of article 7 of the Surrogate's Court Act. Such liability is irreconcilable with the contention of petitioner that it was the intention of the parties that the liability of the respondent surety be predicated upon an annual basis. The court concludes that the provisions of the statute require a determination that the parties intended the liability of the respondent surety to be continuous and not cumulative.

The conclusion of the court makes the allegations contained in paragraphs of the amended petition numbered VI, VII and VIII irrelevant and unnecessary. The respondent should not therefore be compelled to answer the allegations therein set forth. (*Gutta-Percha & Rubber Mfg. Co.* v. *Holman,* 150 App. Div. 678.)

Settle order on notice striking out the challenged paragraphs of the amended petition. Unless the parties stipulate that the answer interposed by the respondent Company to the original petition be deemed an answer to the amended petition, the time of said respondent to interpose an answer to the remaining allegations of the amended petition will be extended to ten days after the making of the order hereon and service of a copy thereof with notice of entry upon counsel. Thereafter any party may move to restore the matter to the regular calendar to be held on any Tuesday, at 10:30 A.M. upon five days' notice by mail.