566 P.2d 308

UNITED STATES FIDELITY AND
GUARANTY CO., a corporation,
Appellant and Cross-Appellee,

v.

Dean C. CHRISTOFFEL, guardian and
conservator of the Estate of Lillian E.
Styer, incompetent, Appellee and Cross-
Appellant.

No. 2 CA–CIV 2281.

Court of Appeals of Arizona,
Division 2.

April 14, 1977.

Rehearing Denied May 26, 1977.

Review Denied June 21, 1977.

Jennings, Strouss & Salmon by William F. Haug and M. Byron Lewis, Phoenix, Fish, Briney, Duffield & Miller, P. C. by Richard Duffield, Tucson, for appellant and cross-appellee.

Miller, Pitt & Feldman, P. C. by Stanley G. Feldman and Janice A. Wezelman, Tucson, for appellee and cross-appellant.

Moore & Romley by Kenneth J. Sherk and Craig R. Kepner, Phoenix, for Surety Association of America as amicus curiae.

## OPINION

HOWARD, Chief Judge.

This is an appeal from a summary judgment against appellant in the sum of $139,877.83 on its guardian's bond wherein Herbert J. Schwager, former guardian of the Estate of Lillian Styer, was the principal. Appellee has filed a cross-appeal contending the trial court erred in not also awarding certain "costs".

On October 3, 1968, appellant issued the following "Bond of Guardian" which was filed in the Pima County Superior Court:

"KNOW ALL MEN BY THESE PRESENTS: that we, HERBERT J. SCHWAGER as principal, and the UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation organized and existing under the laws of the State of Maryland, and authorized to transact surety business in the State of Arizona, as Surety, are held and firmly bound unto LILLIAN E. STYER, Incompetent in the sum of FIFTY THOUSAND AND NO/100 Dollars ($50,000.00), lawful money of the United States of America, to be paid to the said LILLIAN E. STYER, Incompetent for which payment well and truly to be made, we bind ourselves, our and each of our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

SIGNED AND DATED this 3rd day of October, 1968.

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, that whereas, by an order of the above entitled Court, duly given, made and entered on the 3rd day of October, 1968, the above bounden HERBERT J. SCHWAGER was appointed Guardian of the person and estate of LILLIAN E. STYER, Incompetent and letters of Guardianship were directed to be issued to him upon his executing a bond according to law, in the said sum of FIFTY THOUSAND AND NO/100 Dollars ($50,000.00).

NOW, THEREFORE, if the said HERBERT J. SCHWAGER as such Guardian, shall faithfully execute the duties of the trust according to law, then this obligation shall be void; otherwise to remain in full force and effect."

The premium for the bond was the sum of $260 per year. The policy number assigned to the bond was # 22668 16–4033–68. In October of each year thereafter for the years 1969, 1970 and 1971, the guardian received a letter from Arizona Trust Company, which stated that the "renewal" premium of $260 was due and owing and described the billing as being for "Guardian's Bond in the Estate of Lillian Styer, an Incompetent".

On June 9, 1972, the probate court removed Mr. Schwager as guardian for failure to file accountings and in 1975 (see *In re Guardianship of Styer*, 24 Ariz.App. 148, 536 P.2d 717 (1975)), we affirmed the judgment surcharging Mr. Schwager in the sum of $378,789.62.

▪ Appellee commenced this action against the surety which resulted in the trial court's finding that appellant's bond was cumulative, thereby imposing liability upon appellant for sums up to and including

the penal sum of $50,000 for each and every year that the bond was in effect. Appellant claims that the bond was continuous rather than a series of separate contracts and that its liability can be no more than $50,000. We agree with appellant's position.

The subject of the effect of the renewal of an employee's or officer's fidelity bond is annotated in 7 A.L.R.2d p. 946, et seq. Both parties have cited us to this annotation. We note, however, that none of the cases cited in the annotation involved a guardian's bond, a fact which we deem important in interpreting the bond and the effect of the payment of annual premiums.

■ Since we are dealing with a bond required by A.R.S. § 14–804, we follow the rule that where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention, it will be presumed that the intention of the party was to execute such bond as the law required, that such statute constitutes a part of the bond as if incorporated in it, and that the bond must be interpreted in conjunction with the statute as construed by the courts. Such a bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read into it. *Porter v. Eyer*, 80 Ariz. 169, 294 P.2d 661 (1956).

The Arizona statutes relative to the guardianship of the estate of an incompetent as they existed prior to their repeal on January 1, 1974, were as follows:

A.R.S. § 14–804 required the filing of a bond and also provided that the court could require the guardian to give a new bond when deemed necessary. Existing sureties could only be discharged upon order of the court.

A.R.S. § 14–847 which dealt with the bond in the guardianship of a minor was, by virtue of A.R.S. § 14–863, incorporated into guardianships of incompetents. The former provided that the guardian was to give a bond ". . . in an amount and with sureties as ordered and approved by the judge. . . ." It should be noted that the bond did not have to be a surety bond.

A.R.S. § 14–815 provided:

"All proceedings of guardians, and the administration of estates of minors and incompetent persons, shall be in accordance with, and shall be governed by, the laws relating to estates of decedents, except as otherwise provided by law."

By use of this latter statute appellant seeks also to incorporate A.R.S. § 14–452 and § 14–461 into the law governing guardianships. Both of these statutes dealt with decedents' estates. The former stated that the executor's or administrator's bond shall be in an amount not less than the value of the personal property and the probable value of the annual rents, profits, and issues of the real property of the estate and also provided that the probate court, in its discretion, could impound in court or retain in the possession of a bank or licensed financial institution any stocks, bonds or other securities belonging to the estate and the value thereof did not have to be taken into consideration in fixing the amount of the bond.[1]

A.R.S. § 14–461 provided that the bond of an executor or administrator was not to be void upon the first recovery but could be recovered upon from time to time by any person aggrieved, in his own name, until the whole penalty was exhausted.

■ We have serious reservations about the applicability of A.R.S. § 14–452 and § 14–461 to guardianship estates. A.R.S. § 14–815 is a re-writing of § 42–129, Arizona Code of 1939. It specifically listed the proceedings to which it applied. It included sales of property, notices of hearing, orders directing conveyances of property, accountings, and other matters relating to the gen-

---

1. The bulk of the Styer estate consisted of stocks and bonds which were placed in a bank safety deposit bank in the name of the guardian and the guardian did not have access to them without prior court approval.

eral administration of the estate. By virtue of Laws of 1954, Ch. 118, § 5, the list of proceedings was eliminated and simplified. In addition, § 6 of the Laws of 1954, Ch. 118, repealed §§ 42–126, 42–127, 42–128 and 42–130 of the Code of 1939, dealing with the procedure to be used in the sale of real property and investments of the proceeds of the sale, and § 42–143 of the '39 Code which stated:

"The provisions relating to the estates of decedents, so far as they relate to the practice in the superior court, apply to guardianships."

One can conclude that the legislature intended in its re-writing of § 42–129 that the revision should also include the repealed sections of the '39 Code. It is therefore doubtful whether A.R.S. § 14–452 and § 14–461 dealt with "proceedings of guardians".[2] However, the provisions of A.R.S. § 14–452 and § 14–461 are not necessary to our determination of this case.

There are many factors which lead us to conclude that the guardian's bond is continuous and not cumulative. Since the term of the guardian is indefinite there is no practical way to calculate the premiums except on an annual basis. Therefore, the fact that the premiums are charged annually does not show the bond is cumulative in nature. The record demonstrates that there was no intention on the part of the principal and surety that the bond be cumulative and the Arizona statutes do not require the bond to be of such nature. In fact, the guardian could have satisfied the statutory requirements by posting a $50,000 cash bond under A.R.S. § 7–106(A). At any time during the administration of the ward's estate the probate court could have required the guardian to give a new bond in a higher amount. And, the surety could be released without the probate court's permission, a circumstance irreconcilable with the position that the liability of the surety should be predicated upon an annual basis.

**2.** The new probate code has resolved this matter. Under A.R.S. § 14–5105, 14–5411 and 14–5412, subd. A(4) the requirements for determining the guardian's bond are specifically set forth and there is a specific provision that the

*In re Rising,* 201 Misc. 869, 112 N.Y.S.2d 349 (1952).

We note that the cases relied upon by appellee to support his position are inapposite for the following reasons. The case of the *United States v. American Surety Company of New York,* 172 F.2d 135 (2nd Cir. 1949) involved the interpretation of a federal statute. Furthermore, its rationale is suspect. See, *United States v. Maryland Casualty Company,* 129 F.Supp. 45 (D.C.Md. 1955). *Campbell Milk Company v. United States Fidelity & Guaranty Company,* 161 App.Div. 738, 146 N.Y.S. 92 (1914) involved an employee's indemnity bond which was issued for a definite period of one year and renewed by continuation certificates issued over a three-year period of time. *Rose v. Kelsey,* 95 Ohio App. 147, 118 N.E.2d 213 (1953) and *Metropolitan Casualty Company of New York v. Billings,* 150 Conn. 603, 192 A.2d 541 (1963) are similar to *Royal Indemnity Company of New York v. Business Factors, Inc.,* 96 Ariz. 165, 393 P.2d 261 (1964) which held that the statutes reflected an intent that there be a new bond each year when the realtor's license is required to be renewed. *City of Middlesboro v. American Surety Company of New York,* 306 Ky. 367, 211 S.W.2d 670 (1948) involved a bond for a public official who was elected for a one-year term and it was renewed each year he was re-elected. *Issac Upham Company v. United States Fidelity & Guaranty Company,* 59 Cal.App. 606, 211 P. 809 (1922) involved the issuance of two separate bonds.

The inappropriateness of the foregoing cases is stressed by appellee's argument that limiting the surety's total obligation for the bond and renewal periods of almost four years to $50,000 would produce unacceptable results. He argues:

"* * * First, the estate would be left unprotected because of the lack of indemnity coverage after the first defal-

bond of the guardian is not void after the first recovery but may be proceeded against from time to time until the whole penalty is exhausted.

cation had exhausted the original coverage. Second, this lack of coverage would remain unknown to the court, the ward, and the surety until the defalcations were discovered."

Unlike the fiduciaries in the cases cited by appellee, a guardian was required under A.R.S. § 14–1002 to file an annual accounting of his administration of the estate. The dangers cited by appellee are dispelled by adherence to the statutory requirements thus obviating any need to interpret the bond as being cumulative.

█ In his cross-appeal, the appellee claims the trial court erred in not granting him as "costs" in this action the sum of $17,346.81 paid to Mr. M. J. Seby, a certified public accountant for his services rendered in the surcharge proceedings against the guardian which terminated in the judgment for the amount previously mentioned. We do not agree. The accountant's fee was not a "cost" in this action. The judgment of $378,789.62 includes Mr. Seby's fee.

The judgment against appellant is vacated and set aside and the trial court is ordered to enter a judgment against appellant and in favor of the appellee in the sum of $50,000 together with interest and costs.

The order of the trial court disallowing the sum of $17,346.81 as a "cost" is affirmed.

HATHAWAY and RICHMOND, JJ., concur.