[Civ. No. 18186. Fourth Dist., Div. One. Jan. 11, 1980.]

ALLENE D. SMITH et al., Plaintiffs and Appellants, v. FLORENCE COVELL, Defendant and Respondent.

**COUNSEL**

Frederick Hetter, S. Robert Groot and Richard Pray for Plaintiffs and Appellants.

Shifflet & Sharp and William Shifflet for Defendant and Respondent.

## OPINION

STANIFORTH, J.—Plaintiffs' action is for personal injuries sustained by Allene D. Smith and for loss of consortium suffered by her husband, Clyde O. Smith, arising out of an automobile collision. Defendant Florence Covell conceded liability and the absence of any contributory negligence. After a trial solely on the issue of damages, the jury returned a verdict in favor of Allene D. Smith for the sum of $10,000 and a verdict of zero as to plaintiff Clyde O. Smith. Plaintiffs moved for a new trial and upon its denial appeal the judgment.

## FACTS

On August 12, 1974, Covell's car ran into the rear end of the car owned and occupied by passenger Allene D. Smith, driven by her daughter. The Smith car was stopped at a pedestrian crosswalk at the time of the collision. The following day, Mrs. Smith consulted with orthopedic surgeon Dr. McMurray. She complained of pain in the neck, shoulders and upper extremities. At this initial consultation, she made no complaints referable to her lower back, other than a preexisting lumbosacral, low back pain. On September 24, 1974, six weeks after the accident, Dr. McMurray's records indicated that Mrs. Smith was experiencing pain in the low back region. On November 11 of that year, she experienced a "new pain" which was associated with lifting of china from a shelf. On March 11, 1975, Dr. McMurray performed a myelogram which revealed a herniated disc at the L4/L5 level. The doctor performed a laminectomy at Scripps Memorial Hospital and removed the herniated disc. Mrs. Smith continued to complain of pain. Mrs. Smith later consulted a neurologist, Dr. Woods. In the opinion of both Dr. McMurray and Dr. Woods, both the neck and the low back injuries were the result of the automobile collision. The defendant called two medical witnesses, Dr. Schultz and Dr. Cobb, orthopedist and neurosurgeon respectively. Dr. Schultz was of the opinion the present disability was related to preexisting factors; Dr. Cobb was also of the opinion the disability was related to preexisting factors or subsequent injury to the low back.

After return of their verdicts, a poll of the jury showed a nine-to-three vote in favor of the verdicts.

## DISCUSSION

The plaintiffs complain of a melange of jury errors, defense counsel errors and trial court errors as the basis for this appeal. We examine the contentions in the order of their presentation.

## I

Plaintiffs contend the judgment must be reversed and a new trial granted upon the grounds of jury misconduct. In connection with their motion for new trial, plaintiffs filed the declarations of two dissenting jurors, Donna M. Allen and Mary R. Leonard. ■ These declarations stand uncontradicted, detail several acts of juror misconduct.

On voir dire examination of prospective juror Richard M. Cox (subsequently foreman), he stated he had a back condition, namely spondylolisthesis, which had been afflicting him since birth and which had been aggravated by a baseball injury many years ago. Mr. Cox represented in response to a court question he would, if selected, base his decision solely upon the testimony and the evidence that he would hear from the case "as distinguished from [his] own experience with [his] own problem; . . ." Declarations of jurors Allen and Cox indicate that foreman Cox communicated the following matters concerning his own back condition to other jurors, both before and during the jury's deliberation. Cox, in discussion of the question of whether Mrs. Smith should have complained of the low back pain shortly after the accident, informed his fellow jurors when his back "went out" it "went out right away" and "hurt right away." He also told the other jurors when his back went out he could still go to work.

Such conduct is clearly impermissible. ■ Jurors cannot, without violation of their oath, receive or communicate to fellow jurors information from sources outside the evidence in the case. (*People v. Lessard*, 58 Cal.2d 447, 454 [25 Cal.Rptr. 78, 375 P.2d 46].) "[I]t is misconduct for a juror during the trial to discuss the matter under investigation outside the court or to receive any information on the subject of the litigation except in open court and in the manner provided by law. Such misconduct *unless shown by the prevailing party to have been harmless*

*will invalidate the verdict."* (*Kritzer* v. *Citron*, 101 Cal.App.2d 33, 36 [224 P.2d 808]; italics added.)

And in *People* ex rel. *Dept. Pub. Wks.* v. *Curtis*, 255 Cal.App.2d 378, 390 [63 Cal.Rptr. 138], it was held a juror violated his duty when he communicated to fellow jurors during deliberations information as to the "higher qualifications" of the appraisers of the party prevailing in a condemnation case. Where a juror communicated to other jurors during deliberation out-of-court knowledge as to whether a tree limb would catch fire from contact with a power line, such wrongdoing was a "showing . . . patently adequate to support . . . granting a new trial upon the ground of jury misconduct." (*People* v. *Southern Cal. Edison Co.*, 56 Cal.App.3d 593, 598 [128 Cal.Rptr. 697].)

And in *Tunmore* v. *McLeish*, 45 Cal.App. 266 [187 P. 443], two jurors viewed the motorcycle involved in an accident case during a recess before it was admitted into evidence and commented that the speedometer could not have been seen by plaintiff's wife. The misconduct was error justifying a new trial. Further, in *Walter* v. *Ayvasian*, 134 Cal. App. 360, 363 [25 P.2d 526], it was held reversible error for a juror to ascertain by a phone call to her family physician that 190 was a dangerous blood pressure where expert testimony was conflicting. In *Weathers* v. *Kaiser Foundation Hospitals*, 5 Cal.3d 98, 104 [95 Cal.Rptr. 516, 485 P.2d 1132], a juror commented about "'how good Kaiser Hospital was.'" This was held an irregularity in the jury proceedings as well as a concealment of bias.

These same acts of misconduct may be cited both as evidence of a concealed bias and as an objective fact likely to have improperly influenced the jury's verdict. (*Weathers* v. *Kaiser Foundation Hospitals, supra*, at p. 104.)

Cox, in concealing his biases on voir dire and in communicating his "evidence" observations, opinions to his fellow jurors was committing acts of juror misconduct. The question remains: Did such misconduct result in such prejudice to the plaintiffs' cause as to require reversal of the judgment? In *People* v. *Honeycutt*, 20 Cal.3d 150, 156 [141 Cal.Rptr. 698, 570 P.2d 1050], the Supreme Court repeated this long-established rule: "[A] presumption of prejudice arises from any juror misconduct [which] presumption may be rebutted by proof that no prejudice actually resulted." The presumption of harm remains in this record unrebutted. Moreover, an analysis of the facts of this case demon-

strates a reasonable probability of actual harm. The jury's verdict, when viewed in light of evidence most favorable to it, gave no award, or only token award, for Mrs. Smith's general damages. And no award whatsoever was made to the husband where the evidence of his loss of consortium was uncontradicted. This verdict was the end product of a trial in which the question of whether Mrs. Smith's injury to her lower back and the herniated disc were the result of the rear end collision was perhaps the most critical factual issue in the case. The defense doctors stated they did not believe the accident caused the herniated disc because Mrs. Smith had not complained of the low back pain within 72 hours after the accident. Thus the medical testimony in this case was in sharp conflict. The "evidence" that Cox's back hurt him immediately when it went out tended to support the defense doctors' conclusions that the automobile collision could not have caused Mrs. Smith's low back injury in that she did not complain of it within 48 to 72 hours. Further, Cox's statement he was able to work when his back "went out" supports the defense counsel's insinuation that Mrs. Smith's pain and disability were of psychological origin.

Cox's statement made to his fellow jurors interjected improper "evidence" at this most critical point in the case. Had juror Cox's communication been revealed in open court, evidence could possibly have been introduced to distinguish the injuries. By communicating his "evidence" to the jurors outside the court, foreman Cox precluded the plaintiffs from testing it or making an answer and thus deprived the plaintiffs of due process of law.

## II

■ Plaintiffs complain of further juror misconduct. Prospective juror Starets was asked by the court on voir dire: "Is there anything about this particular type of a lawsuit, a suit to recover damages for personal injuries and lost earnings and medical expenses and loss of the injured person's society and companionship, anything about those claims that would in any way interfere with your ability to give both sides a fair trial? In other words, may we assume that none of you feel that this type of claim or these types of claims should not be litigated in court?" Starets made no affirmative response to this question. But during jury deliberations, juror Staret stated to fellow jurors he was against people suing one another, that awarding high verdicts in cases like this was the cause of high insurance rates, and that a high verdict in this case would have a similar effect.

Starets, in making the latter statements, was offering outside evidence as to the impact of personal injury litigation on insurance rates. These improper communications evidence a concealment of bias on voir dire and constituted a misconduct provable by the jurors' affidavits. (*Williams* v. *Bridges*, 140 Cal.App. 537, 542 [35 P.2d 407].) Bias existing at the time of voir dire may be inferred from the utterances in the jury room, and a juror may "indicate a negative answer," by silence and thus conceal his bias by that silence. (*Shipley* v. *Permanente Hospital*, 127 Cal.App.2d 417, 424 [274 P.2d 53, 48 A.L.R.2d 964].)

## III

Several jurors including O'Brien, Ryan and Williams, from their discussions in the jury room, evidence a concealed intent to disregard the court's instructions as regards the husband's, Clyde Smith's, cause of action for loss of consortium. These jurors stated during deliberations that Mr. Smith was not entitled to damages because a husband takes a vow when he marries and has an obligation to stay with her. These jurors had agreed on voir dire that they would not in any way hesitate to follow the law that the court gave them.

The right to a trial by jury in a personal injury action is "jurisdictional." In *Deward* v. *Clough*, 245 Cal.App.2d 439, 444 [54 Cal.Rptr. 68], the court stated: "'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury....' [Citation.] The guarantee is to *12* impartial jurors." (See *Clemens* v. *Regents of University of California*, 20 Cal.App.3d 356, 360 [97 Cal.Rptr. 589]; *Lombardi* v. *California St. Ry. Co.*, 124 Cal. 311, 317 [57 P. 66].)

Here, these several undisputed acts of juror misconduct constitute serious misconduct, destructive of the very heart of plaintiffs' claim for damages. These were no insignificant infringements of the rules. We conclude whether viewed separately or collectively, these acts of juror misconduct deprived plaintiffs of a fair, impartial jury trial and warrant reversal, granting of a new trial on the issue of damages.

## IV

Plaintiffs next argue that the amount of damages awarded was inadequate. In view of the requirement of reversal of the judgment, we

analyze and dispose of further contentions of error for guidance of the court on any retrial. With respect to the award made to the wife, Allene Smith, the evidence was in conflict. If the sole basis tendered for reversal was the inadequacy of damages as to the wife, we would be required to find that substantial evidence supports the jury award. ■ However, with respect to the jury award of zero to plaintiff Clyde Smith, a more difficult question arises. There was uncontraverted evidence of a loss of consortium. In such factual posture, the verdict was inadequate as a matter of law. "The duty of the appellate court to set aside the verdict of the trial court is the same where damage is proven as a proximate result of defendant's negligence, the exact amount of plaintiff's special damages are awarded, and no award is made for the detriment suffered through pain, suffering, inconvenience, shock, or mental suffering. In such a situation we hold an award limited strictly to the special damages is inadequate as a matter of law." (*Gallentine* v. *Richardson*, 248 Cal.App.2d 152, 155 [56 Cal.Rptr. 237].) See also *Davis* v. *Superior Court*, 25 Cal.App.3d 596, 601 [102 Cal.Rptr. 238], where it was held: "Similar results [as in *Gallentine, supra*] have been obtained where only nominal general damages have been allowed."

In the face of uncontradicted evidence of the loss of consortium, the zero verdict is a special category of inadequate damages resulting from the failure of the jury to follow the court's instructions of law.

## V

■ Plaintiffs next cite trial court error in its overruling their attorney's objections to defense counsel's comments and argument as to plaintiffs' failure to call certain witnesses.

Defense counsel in his rebuttal argument commented on plaintiffs' failure to call as witnesses the doctors at Scripps Clinic who had treated Mrs. Smith for injuries sustained in the accident; the implication was that such doctors would have testified adversely to plaintiffs' case. The plaintiffs made a timely objection to this argument but were overruled. These doctors were equally available to subpoena by defendant had she chosen to call them. The inferences raised by the counsel's argument were improper.

The appeal court in *Patton* v. *Royal Industries, Inc.*, 263 Cal.App.2d 760, 769 [70 Cal.Rptr. 44], approved the trial court direction to plain-

tiff's attorney not to comment on defendant's failure to call a certain witness where the parties had an equal opportunity to call the witness. And in *Neumann* v. *Bishop*, 59 Cal.App.3d 451, 479, 482 [130 Cal.Rptr. 786], plaintiff's counsel had commented on the absence of certain witnesses. The court stated: "It was pure speculation to assume that the failure to present those witnesses was because they would give testimony favorable to plaintiff. The court would have been in error in giving an instruction along the lines suggested by defendant on such a flimsy foundation. *Moreover, if proper objection had been interposed the court would have been obliged to cut short plaintiff's comments* with reference to those prospective witnesses and to admonish the jurors to disregard what had been said." (*Id.*, at p. 482; italics added.)

This type of attorney misconduct invites juror speculation. (*Malkasian* v. *Irwin*, 61 Cal.2d 738 [40 Cal.Rptr. 78, 394 P.2d 822].) This speculation so induced must be related to counsel's further insinuations made during the trial, to the effect certain doctors at the Scripps Clinic were of the opinion Mrs. Smith's problems were psychological and thus implied this to be the reason these medical witnesses were not called. The failure of the trial court to cut short this species of improper question must be viewed in conjunction with the other elements of misconduct. The conduct was prejudicial in an unmeasured amount but adds support to the conclusion that reversal and retrial of the issue of damages is mandated.

## VI

Plaintiffs next contend defense counsel (Shifflet) committed prejudicial misconduct in insinuating as facts, during both opening statement and cross-examination, matters he knew were not fact or could not be put into evidence.

During opening statements, and over plaintiffs' objection, Mr. Shifflet said: "She [plaintiff Allene Smith] went to a psychiatrist and the psychiatrist said that her pain is in her mind, that she has an antagonism toward her husband and this is her way of punishing her husband. She went to a psychologist and his report was along the same vein. The man that she went out to the Pain Center to see was a Dr. Sternbach, and he is the one that decided—that handled all her problems at the Pain Center, not Dr. Woods." The facts were Mrs. Smith did see a psychiatrist, a Dr. Appleford (to whom she was referred by her

orthopedist) as well as a Dr. McMurray, a psychologist, and Dr. Sternbach of the Scripps Clinic Pain Center. The balance of the statement is without fact basis in the record—is pure speculation.

Further, defense counsel made representation of facts during his opening statement that was totally unsubstantiated by any evidence. For example, he said evidence would show that Dr. McMurray "didn't want her as a patient anymore," told Mrs. Smith to "get another doctor." The evidence showed Dr. McMurray had referred Mrs. Smith to a neurologist, Dr. Silver, for a consultation in Silver's area of medical specialization; Dr. McMurray did leave his practice for military service, thereby ending his involvement with Mrs. Smith's treatment. There is no fact basis whatsoever to suggest the doctor did not want her as a patient.

In cross-examination, Mr. Shifflet asked Mrs. Smith whether Dr. Sternbach or some other doctor had "told her" or "said" that her injury was a method "of getting attention" or "demonstrating dependence" or "hostility," thus suggesting some qualified doctor had formed an opinion that Mrs. Smith's problems were purely psychological. Objections to such questions were overruled. No evidence was later offered to support these insinuations. Defense counsel had represented both before trial and during voir dire that the only medical witnesses he would call were Dr. Schultz, an orthopedist, and Dr. Cobb, a neurosurgeon, and perhaps Dr. Appleford, a psychiatrist. Dr. Appleford's report—known to defense counsel—was that Mrs. Smith was "suffering from mild, moderate reactive depressive reaction secondary to her injury and this is associated with some degree of anxiety and confusion about the status of her residual." There was no reflection in that report that the pain was in her (plaintiff's) mind or that she had an antagonism towards her husband or that this was her way of punishing him.

Defense counsel in his statements, questioning violated this fundamental rule: "[C]ounsel in opening statements should not, of course, include testimony which they know will not be received, and state the testimony for the purpose of prejudicing the jury." (*I. Upham Co.* v. *United States etc. Co.*, 59 Cal.App. 606, 610 [211 P. 809].)

In *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724, 737 [81 P. 950, 118 A.L.R. 533], plaintiff's counsel's remark was held improper where he did not prove and could not prove such statements; where prejudice

results from such improper statements, a new trial should be awarded. It may be reasonably concluded that not only did the defense counsel fail to make an effort to obtain evidence to substantiate its assertion— but must have known from Dr. Appleford's report—he did not have a factual basis for certain of his questions. A suspicion of a bad faith questioning arises in this factual matrix.

In defense counsel's cross-examination of Mrs. Smith, he sought as evidence purported medical opinions of an out-of-court declarant. Mr. Shifflet questioned Mrs. Smith concerning Dr. Sternbach:

"Q. Did he tell you in a sense that the pain that you were having was a method of obtaining dependency?

"A. Repeat that. I don't understand it.

"Q. Did he tell you that the pain you were experiencing was a method by which you would get attention, a method by which you could be dependent on other people?

"A. No. I don't remember that.

"Q. Did he tell you that your pain represented a method by which you could express hostility?

"A. No."

Defense counsel argued such questions were proper for impeachment purposes and plaintiffs' objections were overruled. In substance, counsel was asking Mrs. Smith whether she had been told by a psychiatrist her symptoms were in effect manufactured for various suspect psychological reasons. The questions called for patent hearsay evidence—a statement made other than by a witness while testifying and offered to prove the truth of the matter. (Evid. Code, § 1200.) It is inadmissible unless falling within one of the recognized exceptions to the hearsay rule. If Dr. Sternbach held such an opinion, such fact might undermine plaintiffs' claim for damages. Such opinion, to be admissible for the truth of the matter stated would have to be examined for admissibility, delivered in open court under oath and subject to cross-examination. It could not be brought in by the back door on cross-examination of the patient. (See *Cote v. Rogers*, 201 Cal.App.2d 138 [19 Cal.Rptr. 767].) Unless such

opinions were true and in fact stated to Mrs. Smith by Dr. Sternbach, they would have no bearing upon her credibility for impeachment purposes. No such foundation was tendered. The barefaced claim that question was for impeachment does not circumvent the bar of the hearsay rule. These claimed out-of-court declarations do not come within any cited exception to the hearsay rule. California courts have repeatedly held attempts to suggest matters of an evidentiary nature to a jury other than by the legitimate introduction into evidence is misconduct whether by questions on cross-examination, argument or other means. (*Kenworthy v. State of California*, 236 Cal.App.2d 378, 396, 397 [46 Cal.Rptr. 396]; *Simmons v. Southern Pac. Transportation Co.*, 62 Cal. App.3d 341, 353, 354 [133 Cal.Rptr. 42].) Plaintiffs' objection should have been sustained and the jury instructed to disregard the questions.

■ Finally, defense counsel committed an act of misconduct when he suggested by cross-examination the plaintiffs were wealthy. Mrs. Smith had in fact inherited certain property including a shopping center, a liquor store and corporations and real estate. Objections were sustained to this question, but their impact was not lost on the jury. Juror Leonard asserted the jurors were impressed with the idea that plaintiffs "already had a lot of money" and "didn't need any more." Unless relevant, references to an adverse party's wealth is improper. (*Weaver v. Shell Oil Co. of California*, 129 Cal.App. 232, 234 [18 P.2d 736].) No showing of relevance was here made.

We have made an independent examination of uncontradicted acts of juror misconduct, proven specifications of attorney misconduct as well as trial court errors and conclude they demonstrate prejudice, compel a reversal, granting of a new trial solely on the issue of damages.

Judgment reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.