[No. A030566. First Dist., Div. Two. Nov. 17, 1986.]

JOAN M. YOUNG, Plaintiff and Appellant, v.
DAVID J. BRUNICARDI, Defendant and Respondent.

COUNSEL

Jeanette K. Shipman, Sterns, Smith & Walker and Sterns, Smith, Walker, Pesonen & Grell for Plaintiff and Appellant.

David F. Beach and James D. Biernat for Defendant and Respondent.

OPINION

ROUSE, J.—Plaintiff, Joan Young, appeals from a judgment entered on a special verdict finding that defendant, David Brunicardi, was not negligent. Plaintiff appeals on the ground of jury misconduct and on the ground that the verdict is against the weight of evidence.

This is an action for personal injuries sustained in a head-on automobile accident which occurred on April 23, 1981. The case was arbitrated on September 16, 1983, with an award to plaintiff. Defendant rejected the arbitration award and filed a request for a jury trial pursuant to rule 1616(a), California Rules of Court.

Trial began on October 24, 1984. During voir dire, a venireman stated she was "familiar with the case because it did go through arbitration," and was duly excused from the panel. No evidence concerning arbitration proceedings was introduced at trial.

Trial concluded on October 30, 1984, and the jury returned a verdict on a vote of nine to three finding defendant was not negligent. Judgment was entered on November 26, 1984.

On November 13, 1984, plaintiff filed notice of her intention to move for a new trial, citing jury misconduct and insufficiency of the evidence as grounds for the motion. (Code Civ. Proc., § 657, subds. 2, 6.) Plaintiff submitted four juror affidavits to support the impeachment of the verdict. Plaintiff and her attorney also filed affidavits disclaiming they had knowledge of jury deliberations and potential misconduct prior to rendition of the verdict. Defendant submitted two juror counterdeclarations to support his opposition to the motion for new trial. The motion was argued on December 21, 1984, and denied without comment on December 27, 1984.

Appeal from the judgment was timely made.

## I.

Plaintiff claims that the trial court improperly denied her motion for new trial[1] made on grounds that there had been prejudicial jury misconduct.

Defendant argues that the grant or denial of a motion for a new trial rests so completely with the discretion of the trial court that an appellate court will not interfere unless abuse of discretion is shown. ██ Defendant's assertion is partially correct in that extraordinary deference is usually shown to the trial judge's determination in appeals from orders granting a new trial. (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 109 [95 Cal.Rptr. 916, 485 P.2d 1132]; *Andrews* v. *County of Orange* (1982) 130 Cal.App.3d 944, 954-955 [182 Cal.Rptr. 176].) However, where the trial judge denies the motion, the situation is different, and calls for a different approach. In our review of such an order *denying* a new trial, as distinguished from an order *granting* a new trial, we are mindful that the appellate court has a constitutional obligation (Cal. Const., art. VI, § 13) to review the entire record, including the evidence, so as to make an independent determination as to whether the act of jury misconduct, if it occurred, was prejudicial to the complaining party's right to a fair trial. (*Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 417, fn. 10 [185 Cal.Rptr. 654, 650 P.2d 1171]; *City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860, 872 [135 Cal.Rptr. 647, 558 P.2d 545]; *Tapia* v. *Barker* (1984) 160 Cal.App.3d 761, 765 [206 Cal.Rptr. 803]; *Andrews* v. *County of Orange, supra,* 130 Cal.App.3d at 955.)

██ Once juror misconduct is established in either a criminal or civil case, a presumption of prejudice will arise. (*People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156 [141 Cal.Rptr. 698, 570 P.2d 1050]; *Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d 388, 416-417.) "However, the presumption is not conclusive; it may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party resulting from the misconduct. [Citing *Smith* v. *Covell* (1980) 100 Cal.App.3d 947, 953-954 (161 Cal.Rptr. 377).] Some of the factors to be considered when determining whether the presumption is rebutted are the strength of the evidence that misconduct occurred, the nature and seriousness of the misconduct, and the probability that actual prejudice may have ensued." (*Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d at p. 417.)

---

[1]Although an order denying a new trial is nonappealable, it is reviewable on an appeal from the judgment under Code of Civil Procedure section 906.

## II.

Plaintiff's allegation of juror misconduct is based upon certain statements attributed to Juror Rudolph Milon who, in the course of his voir dire questioning, had stated that he had retired as a police sergeant seven years before after serving more than 27 years on the force; that, as a policeman, he had occasion to investigate vehicular accidents and that, currently, he was vice-president of the San Francisco Police Credit Union. Plaintiff claims that prejudicial misconduct occurred when, in the course of jury deliberation, Mr. Milon gave erroneous instructions on the law to the other jurors; also, when the jury discussed and speculated about why a police report was not introduced into evidence.

In support of her motion for a new trial, plaintiff submitted affidavits from six jurors. Two of those jurors, Smith and Michela, referred to Juror Milon as the "retired police officer." According to their affidavits, Milon told his fellow jurors that they "should have been able to see the police report which would have indicated the presence of negligence" (Juror Smith) or that the "jurors needed to see the police report on the accident to find negligence . . ." (Juror Michela). According to both Smith and Michela, Juror Milon stated that the plaintiff must have had something to hide, otherwise the jurors could have looked at the report.

Jurors Smith and Michela also reported that Juror Milon said defendant could not be negligent if there was no violation of the Vehicle Code. According to them, Juror Milon then asked that the jury be polled on the issue of whether there had been a Vehicle Code violation. Their story was corroborated by Juror Kutches, who noted that "[s]everal jurors discussed the fact that the police officer wasn't asked by the plaintiff's attorney whether he had issued a citation. These jurors said that with no citation there was no violation of the law and no negligence."

Mr. Milon did not refute these affirmations in his counterdeclaration but stated that "the issue of the Defendant's possible negligence was discussed" in the course of the jury's deliberations and conceded that "[s]ome jury members, including myself, also felt that important evidence had not been produced, including a police report."

█ Jurors cannot, without violation of their oath, receive or communicate to fellow jurors information from sources outside the evidence in the case. (*Smith* v. *Covell, supra,* 100 Cal.App.3d 947, 952.) Communication to fellow jurors of information on an issue under litigation except in open court and in the manner provided by law constitutes misconduct. (*Andrews* v. *County of Orange, supra,* 130 Cal.App.3d 944, 958.) █ When extra-

neous law enters a jury room—i.e., a statement of law not given to the jury in the instruction by the court—the defendant is denied his constitutional right to a fair trial unless the People can prove that no actual prejudice resulted. (*In re Stankewitz* (1985) 40 Cal.3d 391, 397 [220 Cal.Rptr. 382, 708 P.2d 1260], citing *Noll* v. *Lee* (1963) 221 Cal.App.2d 81, 87-94 [34 Cal.Rptr. 223].)

■ Certain evidence is admissible to impeach a verdict: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly." (Evid. Code, § 1150, subd. (a).) It is settled that jurors are competent witnesses to prove objective facts under this provision. (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 351 [78 Cal.Rptr. 196, 455 P.2d 132].)

By contrast, the Legislature has declared evidence of certain other facts to be inadmissible for this purpose: "No evidence is admissible to show the *effect* of such statement, conduct, condition, or event upon a juror either in influencing him to assent or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a); italics added.) "Thus, jurors may testify to 'overt acts'—that is, such statements, conduct, conditions, or events as are 'open to sight, hearing, and the other senses and thus subject to corroboration'—but may not testify to 'the subjective reasoning processes of the individual juror. . . .' (*People* v. *Hutchinson, supra,* at pp. 349-350.)" (*In re Stankewitz, supra,* 40 Cal.3d 391, 398.)

■ Among the overt acts that are admissible and to which jurors are competent to testify are erroneous statements of law made by another juror. (*In re Stankewitz, supra,* 40 Cal.3d 391, 398-400.) In *Stankewitz,* defendant was convicted of first degree murder and robbery by a jury which had been told by one juror, a retired police officer, that a robbery occurs when a person forcibly takes personal property from someone else, regardless of whether the malefactor intends to keep the property. (*Id.,* at p. 396.) The Supreme Court found that the officer had, in effect, consulted his own experience in law enforcement on a question of law. (*Id.,* at p. 399.) "[V]ouching for [the] correctness [of his statement of the elements of robbery] on the strength of his long service as a police officer, he stated it again and again to his fellow jurors and thus committed overt misconduct." (*Id.,* at p. 400.)

■ The determination by a trial court of a motion for a new trial submitted on affidavits which present conflicting facts is a determination of those

controverted facts in favor of the prevailing party. (*Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d 98, 108; *Andrews* v. *County of Orange, supra,* 130 Cal.App.3d 944, 957.) Here the affidavits and declarations before the trial court were not in conflict.

Here, the jury was admonished to follow the law on which they were instructed by the court. Yet Juror Milon, in facts similar to those in *Stankewitz,* violated the court's instructions and described his own outside experience as a police officer on a question of law. He erroneously instructed his fellow jurors, some of whom apparently repeated his legal advice, that defendant was not negligent if he was not cited for a Vehicle Code violation as a consequence of the accident. Juror Milon's erroneous statement of law carried substantial authority because he was, as his fellow jurors knew, a veteran police officer who had retired after more than 27 years on the force. His erroneous legal advice to his fellow jurors constituted an overt act of misconduct. That misconduct raises a presumption that plaintiff suffered prejudice. (*People* v. *Honeycutt, supra,* 20 Cal.3d 150, 156; *Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d 388, 416-417.)

Defendant has failed to rebut the presumption of prejudice that arises from jury misconduct. There was no conflict presented by the affidavits and declarations. Nor did Juror Milon's affidavit refute acts of misconduct ascribed to him. Defendant argues that, in any case, the jury did not believe that plaintiff had submitted sufficient evidence to establish negligence and that it was the jury's determination that plaintiff had not met her burden of proof which led to the discussion of the police report.[2] Inquiry into what the jurors "felt" about the quantum of evidence presented by plaintiff is evidence of the mental processes by which the jury reached its verdict; as such it is inadmissible. (Evid. Code, § 1150, subd. (a); see also *In re Stankewitz, supra,* 40 Cal.3d 391, 402-403.)

In this case the jury's verdict for defendant was reached on a nine-to-three vote, with Juror Milon voting with the majority. Had he not applied an erroneous legal standard to plaintiff's negligence claim, then a verdict for defendant might have been lacking his vote. (See *Andrews* v. *County of Orange, supra,* 130 Cal.App.3d 944, 959.) Furthermore, as recounted in the affidavit of Juror Kutches, it appears that other jurors stated the applicable law as Milon set it out—if there was no citation, there was no negligence.

---

[2] Defendant relies upon a statement which appears in the affidavit of Juror Greene and in the counterdeclarations of Jurors Milon and Simpson. It reads, in pertinent part, as follows: During the course of deliberations, the issue of defendant's possible negligence was discussed. Because a majority of the jury members did not feel that enough evidence had been presented to make a fair determination regarding negligence or non-negligence, a majority of the jurors determined that they could not find negligence.

After an examination of the entire record, we conclude that there is, at the very least, a reasonable probability that plaintiff did suffer harm as a result of the misconduct. (*Hasson* v. *Ford Motor Co.*, *supra*, 32 Cal.3d 388, 417.)

## III.

■ Plaintiff asserts two additional instances of alleged jury misconduct. The first of these rests upon a discussion by jurors of the source of money to pay a potential judgment. Plaintiff suggests that discussion of where the money for the judgment was to come from was somehow tied to the jury's impression that defendant was a "nice guy." Hence, plaintiff suggests, the jury declined to find defendant liable because it was concerned about the financial impact a verdict would have upon him.

Looking to the affidavits we find the following references: Juror Smith states that "one juror asked where the money would come from if the verdict was in favor of the Plaintiff," whereupon several of the jurors discussed this subject; Juror Michela states that "some of the jurors wondered where the money was going to come from if the jury found in favor of the plaintiff"; Michela notes, in a separate paragraph, that "one male juror . . . said that David Brunicardi was a 'nice guy.' Other jurors agreed with this statement . . . ."

We find nothing in these affidavits which is sufficient to establish a bias in favor of defendant or to cause the jury to avoid imposing the financial burden on a judgment upon him.

■ Plaintiff also alleges there was jury misconduct based upon a discussion of prior arbitration proceedings. Juror Smith's affidavit states that "one juror made reference to a dismissed juror's comment that the case had already been to arbitration, and that if that was the case and no decision could be made at that time, it was probably a weak case." Juror Kutches' affidavit states that "there was discussion by members of the jury that the case was already four years old and that this was probably not the first time that the case went through the court system because the case was so old."

The venireman's remark about prior arbitration was made in response to a question addressed to the whole venire as to whether any of them were familiar with the events in question. She said she was, and mentioned that the case had been in arbitration. Apparently, plaintiff's counsel assumed that the reference to arbitration was not potentially prejudicial, and thus did not ask for an admonition. His tactical choice seems to have been correct

in that only one affidavit mentions the arbitration, which apparently did not loom large in the jury's discussion.

Having reviewed the entire record, we conclude that there was jury misconduct here which prejudiced the plaintiff and prevented her from receiving a fair trial.[3]

The judgment is reversed and the matter remanded to the trial court for further proceedings. Plaintiff shall recover her costs on appeal.

Kline, P. J., and Smith, J., concurred.

---

[3]Because we reverse on other grounds, we need not reach plaintiff's additional contention that the verdict is against the weight of evidence.