Filed 12/7/20  Avey v. Mink CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIFFANY AVEY, | |
| Plaintiff and Appellant, | G058637 |
| v. | (Super. Ct. No. 30-2016-00882021) |
| VIRGIL MINK, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Walter P. Schwarm, Judge.  Reversed and remanded.

Pius Joseph, Pius Joseph and James M. Golden for Plaintiff and Appellant.

Michael Maguire & Associates, Paul Kevin Wood and Imran Khundkar for Defendant and Respondent.

\*          \*          \*

Tiffany Avey sued Virgil Mink to recover damages Avey claimed were due to an automobile accident Mink caused. A jury returned a verdict awarding a very small portion of the past damages Avey claimed, and no future damages. The trial court denied Avey's motion for a new trial.

Avey argues on appeal that, during closing argument at trial, Mink's counsel's reference to Avey's failure to call as witnesses several treating physicians was prejudicial error. Under settled law, we agree and reverse with directions to grant the motion for a new trial.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Avey was involved in an automobile accident in 2013, after which she complained to her primary care physician, Dr. Aeri Kang, of severe headaches, back pain, and side pain.

On May 3, 2015, while stopped at a traffic light, Avey's car was rear-ended by Mink's car. Following the accident, Avey was treated by Maria Tu (a physician's assistant at an urgent care center), primary physician Dr. Kang, orthopedic specialist Dr. Kiarash Khajavi, spinal surgeon Dr. Gerald Alexander, pain management specialist Dr. Michael Lowenstein, and neurosurgeon Dr. Fardad Mobin. Between May 2015 and November 2017, Avey's treatments included physical therapy, acupuncture, cervical and lumbar epidural injections, chiropractic treatment, epidural steroid treatments, a lumbar discectomy (decompression surgery), and a lumbar fusion surgery.

Following the last surgery, an MRI showed disc herniations in Avey's spinal canal, spinal cord displacement, and progression of a herniation of Avey's spine. The neurosurgeon who performed the lumbar fusion surgery opined that Avey will need a two-level cervical discectomy and stabilization surgery as well as other pain alleviation

treatments in the future, and that these treatments can only be expected to reduce her pain by 50 percent.

Before the accident caused by Mink, Avey was physically active and participated in athletic and household activities. Following that accident, Avey could not participate in any such activities and found it hard to get any work done around the house.

Avey sued Mink for negligence. Before trial, Avey filed a motion in limine asking the court to order Mink, "not to refer to [Avey]'s decisions not to call certain treating physicians at trial and (2) not to question any witness or admit evidence regarding [Avey]'s decisions not to call certain treating physicians at trial." The trial court denied the motion in limine, relying on CACI No. 203, *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 795-796, and *People v. Mitcham* (1992) 1 Cal.4th 1027, 1051. The court stated: "[W]hen it comes to the failure to call a logical witness, if . . . the evidence supports that there is a witness that one side or the other failed to call, the other side can argue that and argue the inferences that the jury can draw from the failure to call that witness. Now, that being said, . . . I would not allow comment on the failure to call a witness who was legally prevented or legally made herself or himself absent from the court."

Mink conceded at trial that he was negligent in causing the automobile accident, but denied that his negligence caused Avey any harm or that his negligence caused the full extent of Avey's harm.

At trial, Avey called treating Drs. Mobin and Lowenstein. Dr. Lowenstein testified about his treatment of Avey, and Dr. Mobin testified both as to his treatment of Avey and as to his opinion of the cause of her pain and the need for future treatment. Dr. Mobin testified that the accident with Mink "was the most significant cause of [Avey's] injuries in her neck and lower back regarding the treatments that she underwent."

3

Avey also called as expert witnesses Rami Hashish, Andrew Morris, and Santo Steven Bifulco. Hashish, who holds a doctorate in physical therapy and a Ph.D. in biokinesiology, testified as an expert in accident reconstruction that the accident with Mink caused Avey's injuries. Morris, a chiropractor, testified as to the reasonable value of Avey's medical bills. Bifulco, a medical doctor, testified as to Avey's future care costs.

Mink called Tu and Dr. Kang, the urgent care physician's assistant and Avey's primary care physician, as witnesses for the defense. Mink also called as expert witnesses Drs. Richard Rhee and Dennis Malkasian. Dr. Rhee reviewed Avey's MRIs and other medical records, and testified they showed pre-accident degeneration in Avey's spine. Dr. Malkasian testified Avey suffered from chronic disc degeneration not caused by the accident with Mink. Dr. Malkasian also testified that the surgery performed by Dr. Alexander was not required as a result of the Mink accident, and further surgery would not be treating any problems caused by the Mink accident. Neither party called Avey's treating physicians Dr. Khajavi or Dr. Alexander.

During closing arguments, the following occurred:

"[Mink's Counsel]: On a side note, I hope you all noted who was the first person who called Ms. Tu. It wasn't [Avey] who called her own treating doctor to come testify about her case regarding her complaints of pain from this accident, it was the defense, Mr. Mink, who called Ms. Tu to come here and testify about that. A month later, [Avey] went back to her primary care doctor, Dr. Kang. Again, who called Dr. Kang in their case? It wasn't [Avey], it was Mr. Mink who had to call Dr. Kang to testify about what [Avey] told her about her complaints of pain. At that time, she complained, as you heard Dr. Kang testify, about the right shoulder pain. And just to make sure everything was okay, Dr. Kang did cervical palpations on [Avey]. What came back? They were all fine."

4

"[Mink's counsel]: I have a very simple question to ask you: Who is not here? Who are all the treating doctors? Who are all the other caregivers for the plaintiff who did not come here and testify today? [¶] There would have been two more added to the list—

"[Avey's counsel]: May we approach, your Honor?

"The Court: Okay.

"[Discussion held off the record.]

"The Court: The objection is overruled.

"[Mink's counsel]: Who is not here? The missing? The missing people essentially. Dr. Khajavi, who is an orthopedic doctor who was referenced by [Avey's counsel] numerous times.

"The reviewing radiologist who saw the post-surgical MRIs that [Avey's counsel] was confronting Dr. Rhee and Mr. Malkasian with. And finally, Dr. Alexander, the doctor who did the first lumbar surgery."

Avey filed a motion to strike the above-quoted portion of closing argument or, in the alternative, to provide a curative instruction to the jury (which was already deliberating). The court denied the requests: "[Mink's counsel]'s argument didn't ask for the jury to speculate as to what Dr. Khajavi or Dr. Alexander or the reviewing radiologist might have said, had they testified. She simply drew the jury's attention to the failure to call these logical witnesses."

Avey asked the jury for $361,494.86 for past economic damages,[1] $451,071 for future economic damages, $400,000 for past noneconomic damages, and $1.6 million for future noneconomic damages. Mink's counsel argued that the jury should award Avey $500 for past economic damages, representing the cost of the initial visits to urgent

---

[1] Chiropractor Morris testified that $358,611.21 was the reasonable value of the medical bills incurred by Avey.

care and her primary doctor after the accident, and between $10,500 and $15,500 for noneconomic damages.[2]

The jury returned a verdict in Avey's favor, and awarded $37,610 in damages: $12,610 in past economic expenses and $25,000 in past noneconomic damages, with no award for future economic or noneconomic losses. The court entered judgment on the verdict.

Avey filed a motion for a new trial arguing that counsel's insinuations about Avey's decision not to call three of her treating physicians constituted prejudicial misconduct under Code of Civil Procedure section 657, subdivision 1. The trial court denied the motion for a new trial because (1) the failure to call logical witnesses who could testify as to the disputed issue of causation was relevant, (2) the argument by Mink's counsel responded to Avey's counsel's references to the non-testifying treating doctors at trial, and (3) the argument by Mink's counsel did not ask the jury to speculate as to what the testimony of these doctors might have been. This appeal by Avey followed.

---

[2] Mink's trial counsel argued as follows regarding noneconomic damages: "Even though [Avey] didn't really testify about it significantly, she is entitled to have non-economic damages regarding her physical pain after the accident. [¶] We didn't hear a lot of testimony from her. In fact, her Instagram photos seem to suggest that she wasn't having a lot of physical pain after the accident, but you still were involved in an accident, you might still have felt some body aches, that's fine. We'll compensate you for it. [¶] Past [noneconomic] damages of $5,000. We come up with that number because, you know, the average salary is around $50,000, it's actually a little less than that, but we'll say $50,000 divided by 12, $5,000 for a month. Give her one or two months of past [noneconomic] damages."

6

I.

*STANDARD OF REVIEW*

"'An order denying a motion for new trial will not be set aside unless there was an abuse of discretion that resulted in prejudicial error.' [Citation.] We accord great deference to the trial court's exercise of its wide discretion in ruling on a motion for a new trial. [Citation.] In reviewing an order denying a motion for a new trial, we review the entire record, including the evidence, and independently determine whether any error was prejudicial." (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1018.) A trial court's decision regarding the admission of evidence is also reviewed for abuse of discretion. (*People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1555.)

II.

*THE TRIAL COURT ERRED BY ALLOWING MINK'S COUNSEL TO COMMENT ON AVEY'S FAILURE TO CALL WITNESSES WHO WERE EQUALLY AVAILABLE TO MINK.*

It is within the legitimate range of argument for counsel to comment on the opposing party's failure to offer stronger available evidence and to invite the jury to draw an adverse inference against the opposing party. (CACI No. 203; see Evid. Code, § 412.)[3] However, it is improper for counsel to argue that the jury should draw an

---

[3] "You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence." (CACI No. 203.) "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust." (Evid. Code, § 412.) The language from the earlier standard jury instructions was taken directly from Evidence Code section 412: "If weaker and less satisfactory evidence is offered by a party, when it was within that party's ability to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust." (BAJI No. 2.02.)

adverse inference from the opposing party's failure to call a particular witness if the witness is equally available to both parties. (*Smith v. Covell* (1980) 100 Cal.App.3d 947, 956-957 [improper comments by defense counsel regarding plaintiff's failure to call treating physicians, where plaintiff's treating physicians were known and equally available to defendant by subpoena]; *Fleming v. Safeco Ins. Co.*(1984) 160 Cal.App.3d 31, 41-42 [error to comment on opposing counsel's failure to produce witness, where it appeared witness would have been equally available to both parties]; *Winkie v. Turlock Irrigation Dist.* (1937) 24 Cal.App.2d 1, 7 ["It is within the legitimate range of argument for counsel to comment upon the failure of the opposing party to produce certain persons as witnesses unless the witness is equally available to both parties"].)

In *Smith v. Covell, supra*, 100 Cal.App.3d at page 951, the plaintiffs sued the defendant for injuries suffered in an automobile accident caused by the defendant. The defendant conceded liability, and the only issue for the jury was the plaintiffs' damages. (*Ibid.*) The jury returned a verdict of $10,000 for one plaintiff, and a verdict of zero for her husband (who sued for loss of consortium). (*Ibid.*) After denial of a motion for a new trial, the plaintiffs appealed. (*Ibid.*) The appellate court reversed the verdict based on numerous errors by the jury, the defendant's counsel, and the trial court. (*Id.* at p. 960.)

The issue in *Smith v. Covell* that is relevant to this appeal is the comment by defendant's counsel on the plaintiffs' failure to call treating physicians as witnesses. The court in *Smith v. Covell* held the comment was prejudicial error:

"Defense counsel in his rebuttal argument commented on plaintiffs' failure to call as witnesses the doctors at Scripps Clinic who had treated Mrs. Smith for injuries sustained in the accident; the implication was that such doctors would have testified adversely to plaintiffs' case. The plaintiffs made a timely objection to this argument but were overruled. These doctors were equally available to subpoena by defendant had she chosen to call them. The inferences raised by the counsel's argument were improper.

8

"The appeal court in *Patton v. Royal Industries, Inc.* [(1968)] 263 Cal.App.2d 760, 769, approved the trial court direction to plaintiff's attorney not to comment on defendant's failure to call a certain witness where the parties had an equal opportunity to call the witness. And in *Neumann v. Bishop* [(1976)] 59 Cal.App.3d 451, 479, 482, plaintiff's counsel had commented on the absence of certain witnesses. The court stated: 'It was pure speculation to assume that the failure to present those witnesses was because they would give testimony favorable to plaintiff. The court would have been in error in giving an instruction along the lines suggested by defendant on such a flimsy foundation. Moreover, if proper objection had been interposed the court would have been obliged to cut short plaintiff's comments with reference to those prospective witnesses and to admonish the jurors to disregard what had been said.' [Citation.]

"This type of attorney misconduct invites juror speculation. [Citation.] This speculation so induced must be related to counsel's further insinuations made during the trial, to the effect certain doctors at the Scripps Clinic were of the opinion Mrs. Smith's problems were psychological and thus implied this to be the reason these medical witnesses were not called. The failure of the trial court to cut short this species of improper question must be viewed in conjunction with the other elements of misconduct. The conduct was prejudicial in an unmeasured amount but adds support to the conclusion that reversal and retrial of the issue of damages is mandated." (*Smith v. Covell, supra,* 100 Cal.App.3d at pp. 956-957, italics omitted.)

Mink called Tu, the urgent care physician's assistant, to establish that Avey did not complain of neck pain during her examination, and that Avey denied head trauma on the day of the Mink accident. Tu's notes from the visit reflect that Avey complained of low back and right shoulder pain. Mink also called Dr. Kang, who testified that in April 2012, Avey had complained of suffering right shoulder pain off and on for a number of years. Dr. Kang also testified that in January 2013, Avey came into the office complaining of a severe headache, back pain, and side pain, due to an automobile

accident.  Dr. Kang's records for Avey's June 2015 visit, after the Mink accident, reflect that an examination of Avey's neck showed no tenderness or muscle spasms, and that her neck flexion, extension, and rotation were normal, but that Avey did have low back pain, muscle spasms, and muscle strain.  Dr. Kang testified that her notes from Avey's September 2015 appointment reflect that Dr. Kang did not examine Avey's neck or make any notation about neck pain; Dr. Kang therefore believed that Avey did not complain about neck pain at that time.

During closing argument, Mink's counsel referred to Avey's failure to call Tu, Dr. Kang, Dr. Khajavi, and Dr. Alexander as witnesses.  Given the testimony of Tu and Dr. Kang, this reference was clearly intended to invite the jurors to speculate that the other treating physicians would have testified that Avey's complaints were not consistent with the trauma she allegedly suffered in the Mink accident.  Under *Smith v. Covell*, it was error for the trial court to permit such argument.

Mink attempts to distinguish *Smith v. Covell* on the ground that the reference to the failure to call treating physicians in that case was only one of a number of errors that had the cumulative effect of prejudicing the outcome of the trial.  Nothing in that case suggests that the court only reversed and remanded the judgment based on other trial court errors.  Mink also notes that in *Smith v. Covell* a new trial was granted solely on the issue of damages.  Before the initial trial, the defendant had conceded the issue of liability, and the only issue for trial was damages.

*Cassim v. Allstate Ins. Co., supra*, 33 Cal.4th 780, on which the trial court relied, does not affect our analysis.  In that case, the Supreme Court was considering the closing argument of an insured's trial counsel in the insured's bad faith case against the insurer.  The insurer claimed the argument was improper because it appealed to the jury's self-interest and urged them to decide the case subjectively rather than objectively; the Supreme Court concluded that the argument was not improper on this ground.  (*Id.* at pp. 796-798.)  The insurer also argued that the argument suggested judicial approval; the

10

Supreme Court concluded any error would be harmless, and therefore did not decide whether the argument was improper on this ground. (*Id.* at pp. 798-800.) Thus, the grounds urged as error were not relevant to the issues in the present case, and were either determined to not be errors or to be harmless.[4]

We therefore turn to the question of whether the error was prejudicial.

### III.

### *THE ERROR WAS PREJUDICIAL.*

To establish prejudice, Avey must prove there is a reasonable probability that she would have obtained a more favorable result in the absence of the error. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574; *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1051.)

Avey argues that she suffered prejudice because of the "huge disparity" between the amounts reasonably charged by Avey's doctors and the amount awarded by the jury. Avey also argues that Mink's counsel would not have made the challenged argument "unless she believed it would persuade the jury to award only a minimal amount of damages." Mink argues that the court's ruling was correct unless the verdict was unsupported by substantial evidence. This, of course, is not the correct standard.

We note that this is not a case of attorney misconduct, as Mink's counsel's argument was consistent with the pretrial ruling of the trial court, and Avey's counsel's objection to the argument was overruled by the court. Mink's citation to cases involving

---

[4] In its ruling on the motion in limine, the trial court cited *People v. Mitcham, supra*, 1 Cal.4th 1027. Mink does not rely on this case in his respondent's brief on appeal. In *People v. Mitcham*, the Supreme Court held that a prosecutor's argument referring to "the failure of the defense to call witnesses to contradict the testimony of the prosecution's witnesses or to offer any evidence in opposition to the prosecution's case," did not violate the rule that the prosecution may not comment on the defendant's failure to testify. (*Id.* at p. 1051, citing *Griffin v. California* (1965) 380 U.S. 609; *People v. Gray* (1979) 91 Cal.App.3d 545, 552.) This case is not relevant to the issues before us on appeal.

11

attorney misconduct are therefore of little assistance to us.[5] Rather, the trial court's ruling on the motion in limine constituted an error of law, and the trial court abused its discretion in denying the motion for a new trial based on that error of law.

As explained *ante*, the argument that Avey had failed to call certain witnesses contains an implied allegation that these witnesses would not have testified favorably to Avey, and that Avey was hiding something from the jury by failing to call them. Mink's expert witness, Dr. Malkasian, testified, in part, that the surgery performed by Dr. Alexander "was not indicated." Counsel's inference that Avey chose not to call Dr. Alexander as a witness at trial because the doctor's testimony would be unfavorable to Avey impermissibly amplified Dr. Malkasian's testimony. The reference to the failure to call the radiologist who reviewed Avey's MRI could have improperly caused the jury to discount the testimony of Avey's expert witnesses that the MRIs and other test results showed the accident caused Avey's damages, and to give too much weight to testimony of Mink's expert witness Dr. Rhee that the MRIs did not show damage caused by the accident. Finally, the argument that Avey failed to call Dr. Khajavi could have implied that the orthopedic specialist's testimony would not support, and indeed would have undermined, the testimony of Avey's witnesses.

The jury's award in favor of Avey establishes that they found the accident caused by Mink's negligence had resulted in damage to Avey. The size of the difference between the amount claimed in damages and the amount awarded was, to put it mildly, significant, and the jury failed to award any future damages. Mink's counsel's argument implied that Avey was hiding something. Counsel was permitted to make this argument based on a misunderstanding of the law; we do not intend to imply that counsel committed any sort of misconduct, as the trial court had denied Avey's motion in limine and then overruled her objection to the argument. But all the foregoing demonstrates that

---

[5] Likewise, Mink's citation to cases of juror misconduct are inapposite.

12

there is a reasonable probability that Avey would have obtained a better result had counsel been precluded from making this argument. Avey has established that the error was prejudicial. We will therefore reverse the judgment and remand the matter to the trial court to grant the motion for a new trial.[6]

The judgment is reversed and the matter is remanded with directions to grant the motion for a new trial. Appellant to recover costs on appeal.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

---

[6] At oral argument, for the first time, Avey requested a new trial on the issue of damages only. In her motion for a new trial and in her appellate briefs, however, she had sought a new trial without limitation.