Filed 2/26/14  Jones v. Barnes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FREDDIE L. JONES et al., | H037971 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 1-09-CV137086) |
| v. | |
| CHARLES WAYNE BARNES, | |
| Defendant and Respondent. | |

This appeal arises from a two-vehicle accident between plaintiffs Freddie and Lisa Jones and defendant Charles Wayne Barnes that occurred on March 14, 2007, in San Jose.  Plaintiffs filed a personal injury action against defendant, asserting his negligence caused spinal injuries Mr. Jones allegedly sustained in the collision.  Following a trial, the jury concluded that defendant was not negligent.

Plaintiffs moved for judgment notwithstanding the verdict (JNOV), for a new trial, and to strike or tax defendant's expert witness fees.  The trial court denied all three motions.  We shall affirm.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Our summary of the facts is taken from the reporter's transcript and the portions of the written record contained in the clerk's transcript.

*A*.     *The Accident*

Shortly after 3:00 p.m. on March 14, 2007, defendant left work to pick up his children at daycare, something his wife usually did.  The traffic was heavy and he needed

to pick the children up by 5:00 p.m.  Defendant drove his Ford F-150 pickup truck westbound on Brokaw Road in San Jose and planned to take a left on First Street.  When the left turn signal at the First Street intersection turned green, the vehicle in front of defendant, a white sedan, did not pull forward.  Defendant honked at the white sedan before realizing that its right turn signal was on, and the driver was attempting to move into the through traffic lane to the right.

The white sedan was occupied by plaintiffs, a couple from Arizona on their way to the airport after visiting San Jose for the first time.  Mr. Jones, who was rendered a paraplegic by a prior truck accident, was driving the white sedan using hand controls.  Mr. Jones intended to go straight on Brokaw at the First Street intersection, and had mistakenly ended up in the left turn lane.  Therefore, when the left turn signal at the First Street intersection turned green, Mr. Jones did not pull forward, and instead waited until he could move into the through traffic lane to his right.  By the time he changed lanes, the left turn signal at the First Street intersection had turned red.

Rather than pull forward in the left turn lane and wait for the signal to turn green, defendant went straight at the First Street intersection.  There were two through lanes of traffic.  Defendant moved into the right lane to pass plaintiffs' vehicle, and then pulled back in front of plaintiffs in the left through lane.  Defendant testified that he slowed after passing plaintiffs' vehicle because of the traffic conditions, but that he never slammed on his brakes.  Defendant also testified that he did not change lanes again before the accident, which occurred at the intersection of Airport Parkway[1] and Gateway Place.  According to defendant, plaintiffs' vehicle hit the back bumper and side panel of his truck.

Lance Rasmussen, who was driving on Brokaw Road behind the parties' vehicles, testified that he first noticed plaintiffs' vehicle when it was sitting in the left turn lane at

---

[1] Brokaw Road becomes Airport Parkway between First Street and Gateway Place.

the First Street intersection and attempting to move into the through traffic lane. Rasmussen testified that after plaintiffs' vehicle moved into the through lane, defendant pulled alongside plaintiffs' vehicle, yelling at plaintiffs and shaking his fist. According to Rasmussen, defendant then cut in front of plaintiffs and slammed on his brakes. Rasmussen testified that plaintiffs moved to the right lane and defendant again cut them off and slammed on his brakes. At that point, Rasmussen wrote down the pickup truck's license plate number because he believed he was observing a road rage incident. Rasmussen testified that the accident occurred shortly thereafter when defendant, who was travelling in the left lane, swerved into plaintiffs' vehicle in the right lane, causing plaintiffs' vehicle to go up on the curb. Rasmussen called 911 to report the accident.

Mr. Jones testified that defendant pulled in front of his vehicle and stopped twice prior to the accident, although Mr. Jones did not observe defendant yelling or gesturing. Mr. Jones testified that defendant's truck struck his vehicle, causing his vehicle to go up on the curb.

Following the accident, plaintiffs and defendant pulled into a parking lot. Defendant testified that he wrote down his contact information and gave it to plaintiffs, but that Mr. Jones refused to provide his information. According to defendant, Mr. Jones also told defendant "you're crazy" following the accident. By contrast, Mr. Jones testified that defendant did not provide his contact information, but instead asked why Mr. Jones hit his truck, to which Mr. Jones responded "I am not talking until the police get here." Defendant denied hearing Mr. Jones mention the police.

Defendant left the scene to go pick up his children. About 10 minutes after the accident, after defendant had left, the police arrived. Mr. Jones did not say anything to defendant or the police about being injured. Plaintiffs' vehicle needed to be towed, and plaintiffs took a cab to the airport and left for Arizona as scheduled.

Shortly after leaving the scene, defendant spoke with his wife, who said she could pick up the children. That afternoon, defendant took his vehicle to the auto body repair

3

shop, which repaired the damage from the accident for $2,816.  Defendant also called his insurance agent, who told him he was not required to report the incident.

Mr. Jones testified that he noticed numbness in his right arm on the plane ride home that has persisted since the accident.  Mr. Jones's doctor testified that the accident caused Mr. Jones's right arm numbness as well as the enlargement of a pre-existing spinal cyst, which required surgery.

### B.	Evidentiary Rulings

Before trial, the court granted defendant's motion in limine to exclude the police report of the accident on hearsay grounds.  The court also barred any direct reference to the fact that defendant had insurance.  Consequently, defendant testified that he reported the accident to an unidentified individual, and that "they" said there was no need to report it to the police; defendant did not testify as to who gave him that information.  On cross-examination, defendant acknowledged that the individual who advised him was not a member of law enforcement or his attorney.

### C.	The Verdict

The jury found defendant was not negligent.  The jury did not reach the issues of causation or damages.  The court entered judgment on the verdict on November 28, 2011.

### D.	Plaintiffs' Posttrial Motions

On December 9, 2011, plaintiffs filed a motion for JNOV on the ground that no substantial evidence supported the verdict and that the evidence required a directed verdict in their favor on "all the issues."

Also on December 9, 2011, plaintiffs filed a notice of intention to move for a new trial.  In their new trial motion, filed on December 16, 2011, plaintiffs sought a new trial on grounds of jury misconduct, insufficiency of the evidence, and evidentiary errors they said prevented a fair trial.  In support of their claim of jury misconduct, plaintiffs submitted declarations from one of the jurors, Vernie Dela Cruz, and from their trial attorneys, Anton Gerschler and Dena Acosta.

4

Juror Dela Cruz declared that: (1) several jurors who voted in the majority "struggled with the jury instructions defining standard of care for driving," noting that one of the jurors stated "we are all negligent in our driving if this is the law," and that others agreed; (2) one of the jurors stated "[a]t night time, if there is a refrigerator in the road and you swerve to miss it, it wasn't because I was negligent, it was because there was a refrigerator in the freeway"; (3) after the jurors were told they could not see the police report because it was not in evidence, several jurors "became bogged down with why we couldn't have it, since it would contain pictures from the scene to support Plaintiffs' theory of the case"; (4) several jurors who voted in the majority did not believe Rasmussen because his memory was too clear; and (5) Juror Cynthia Mitchell said during deliberations that she had made up her mind early in the trial.

Plaintiffs' attorneys declared that they and defense counsel Michael Dodson spoke with three jurors after the trial, including Cynthia Mitchell. Plaintiffs' counsel declared that Mitchell made the following statements, among others:

"I made my mind up 2 days in"; and

"The testimony of eyewitness Lance Rasmussen was discounted because his memory was too clear after four years and he seemed too motivated to tell his story."

In opposition to plaintiffs' motion for a new trial, defendant objected to the declarations submitted by plaintiffs on various grounds. Defendant also submitted declarations from Juror Mitchell and attorney Dodson. Mitchell stated that she did not recall telling other jurors or the parties' counsel that she made her mind up early in the case, and that she would not make such statements. Dodson stated that, during the posttrial conversation with counsel, Mitchell never said "I made my mind up 2 days in" and none of the jurors remarked that the accident was not intentional.

The trial court denied plaintiffs' JNOV and new trial motions on January 27, 2012. With respect to the JNOV motion, the court found that there was substantial evidence to support the jury verdict regarding liability. In reaching that conclusion, the court noted

5

that, at trial, "witnesses presented conflicting accounts concerning liability" and reasoned that the existence of "inconsistent" witness accounts "does not mean that the evidentiary record is insufficient to support a jury's verdict." The court also stated that "even if [it] were to find legal grounds for setting aside the verdict, a [JNOV] . . . would not be available unless damages were certain."

As to the motion for a new trial, the court found plaintiffs' arguments to be without merit. With respect to their claim of jury misconduct, the court assumed without deciding that plaintiffs' supporting declarations were admissible but concluded that plaintiffs had not met their burden of establishing misconduct, reasoning that the evidence was "conflicting and equivocal."

### F. *Plaintiffs' Motion to Strike or Tax Expert Witness Fees*

On December 20, 2011, plaintiffs filed a motion to strike or tax costs. Plaintiffs argued in their motion that defendant was not entitled to the $23,251.98 in expert witness fees he requested pursuant to Code of Civil Procedure section 998 (section 998) because defendant had not made a good faith settlement offer. Plaintiffs argued that defendant's settlement offers--to Mr. Jones for $6,501 and to Mrs. Jones for $501--were made at a time when the defense lacked sufficient information upon which to determine the reasonableness of the offers and were not made in good faith. The trial court denied the motion on April 5, 2012, reasoning that defendant's settlement offers were neither unreasonable nor made in bad faith, given that defendant had strenuously denied negligence and causation throughout the litigation.

### G. *Judgment and Notice of Appeal*

Plaintiffs timely filed a notice of appeal from the judgment and the order denying their JNOV and new trial motions on February 22, 2012. On April 26, 2012, plaintiffs filed an amended notice of appeal to include an appeal from the order denying their motion to strike or tax costs.

6

## II.    DISCUSSION

### A.    *Denial of JNOV Motion*

#### 1.    *Standard of Review*

"A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)  On appeal "the standard of review is whether any substantial evidence--contradicted or uncontradicted--supports the jury's conclusion." (*Ibid.*)  In determining whether substantial evidence supports the verdict, we view the evidence " ' "in the light most favorable to the jury's verdict, resolving all conflicts and drawing all inferences in favor of that verdict." ' " (*Ajaxo Inc. v. E*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, 49.)

"We emphasize that the [substantial evidence] test is *not* the presence or absence of a substantial conflict in the evidence.  Rather, it is simply whether there is substantial evidence in favor of the respondent.  If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.  As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

#### 2.    *Sufficiency of the Evidence*

Plaintiffs contend the verdict is unsupported by substantial evidence because the evidence establishes that defendant's version of events--that plaintiffs' vehicle hit his vehicle--is false.  According to plaintiffs, because their vehicle went over the curb to the right of the roadway, defendant *must* have hit them from the left as Mr. Jones and Rasmussen testified.  They claim that it would have been "impossible" for their vehicle to go over the right-hand curb if they had hit defendant's vehicle, which was to their left.

7

Plaintiffs offered no direct evidence--such as expert accident reconstruction testimony--in support of their physical impossibility theory. Based on the evidence that was before it (namely, the testimony of the parties and Rasmussen), the jury reasonably could have believed defendant's version of events and inferred that Mr. Jones swerved to the right after making contact with defendant's vehicle, causing plaintiffs' vehicle to go up on the curb. Because the verdict is supported by defendant's testimony and reasonable inferences, we cannot conclude that it lacks substantial evidentiary support.

Plaintiffs argue that the jury could not reasonably credit defendant's testimony because he "abandoned the scene . . . and lied in his testimony about giving his contact information to" plaintiffs. But plaintiffs ignore the fact that defendant explained his departure, testifying he believed he still needed to pick up his children at the time he left the scene. Plaintiffs also gloss over the fact that whether defendant in fact provided his information was disputed, with defendant testifying that he did and plaintiffs saying he did not. In any event, neither the trial court nor the appellate court can reevaluate the credibility of witnesses on a motion for JNOV. (*Ajaxo Inc*. *v*. *E\*Trade Group*, *Inc*., *supra*, 135 Cal.App.4th at p. 49.) The jury evidently believed defendant, and his testimony alone constitutes substantial evidence supporting the verdict. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [" 'The testimony of a witness, even the party himself, may be sufficient.' "].)

We also note that, contrary to plaintiffs' suggestion, the jury was not required to credit Rasmussen's testimony merely because he was a disinterested witness. The finder of fact is free to reject even uncontested testimony so long as the rejection is not arbitrary. (*Ortzman v*. *Van Der Waal* (1952) 114 Cal.App.2d 167, 171.) Here, the jury reasonably could have disbelieved Rasmussen, believing Rasmussen had concluded defendant was engaged in road rage before the collision occurred and that his memory of the accident was tainted by that judgment.

For the foregoing reasons, we conclude there was substantial evidence to support the jury's verdict.[2]

## B. Denial of Motion for New Trial

Plaintiffs moved for a new trial on the grounds of juror misconduct, insufficiency of the evidence, and allegedly prejudicial evidentiary rulings. We address each ground below.

### 1. Juror Misconduct

Plaintiffs claim they are entitled to a new trial because one or more jurors (1) prejudged the case; (2) misstated the law to other jurors; and (3) disregarded the court's instructions on the law.[3]

---

[2] Plaintiffs also argue the trial court mistakenly believed it could not grant them a partial JNOV on the issue of liability and have another trial to determine damages. That argument is based on the court's statement that "even if [it] were to find legal grounds for setting aside the verdict, a [JNOV] . . . would not be available unless damages were certain." Assuming the court mistakenly believed it could not grant a partial JNOV, the error was harmless because the court concluded substantial evidence supported the jury's verdict as to negligence. Therefore, the court would have reached the same result even if it knew if could grant a partial JNOV.

[3] Plaintiffs, who are African American, also speculate that the jury, which had no African American members, was racially biased against them. In support of that claim, raised for the first time on appeal, plaintiffs request that we take judicial notice of (1) the results of an Associated Press poll indicating that 51 percent of Americans express "anti-black attitudes"; (2) "State & County QuickFacts" from the United States Census Bureau showing that, in 2010, 3.2 percent of the population in the City of San Jose was Black; and (3) a San Francisco Chronicle article about racially mixed juries. The request for judicial notice is denied because it would require us to *accept as true* the contents of those three documents, which we may not do. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 193 [" 'When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable.' "].) We need not further consider what plaintiffs themselves characterize as an "hypothesis of animus toward Mr. Jones because he is black," because it is untimely, unsupported by any evidence, and rests on the premise that there is no other explanation for the verdict in this case. For the reasons discussed in this opinion, we disagree with that premise.

9

### a. Standard of Review

" 'In ruling on a request for a new trial based on jury misconduct, the trial court must undertake a three-step inquiry. [Citation.] First, it must determine whether the affidavits supporting the motion are admissible. [Citation.] If the evidence is admissible, the trial court must determine whether the facts establish misconduct. [Citation.] Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial.' " (*Sierra View Local Health Care Dist. v. Sierra View Medical Plaza Associates* (2005) 126 Cal.App.4th 478, 484.) We review the trial court's determination regarding the admissibility of affidavits for abuse of discretion. (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 345).[4] "On review from a trial court's 'determin[ation of] whether misconduct occurred, "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." ' " (*Ibid.*) If misconduct occurred, we must determine whether it was prejudicial. In doing so, we review "the entire record, including the evidence, and make[] an independent determination as to whether the misconduct was prejudicial." (*Ibid.*)

### b. Prejudgment of the Case

Plaintiffs argue that Juror Mitchell committed juror misconduct by prejudging the case. For this claim of misconduct, plaintiffs rely on the declarations of Juror Dela Cruz and attorneys Gerschler and Acosta, all of whom declared that Mitchell told them she made up her mind to find defendant not negligent before hearing all of the testimony.

Courts have held that statements similar to the one Mitchell is said to have made, such as "I made up my mind during trial," show that the juror "prejudged the case." (*Grobeson v. City of Los Angeles* (2010) 190 Cal.App.4th 778, 790.) "For a juror to prejudge the case is serious misconduct." (*Clemens v. Regents of University of California* (1971) 20 Cal.App.3d 356, 361.) Accordingly, if Mitchell in fact decided that

---

[4] Like the trial court, we assume plaintiffs' declarations were admissible.

10

defendant was not negligent before the close of evidence, we would have no trouble concluding that misconduct occurred.

However, defendant submitted declarations from Mitchell and attorney Dodson that contradicted those of Juror Dela Cruz and attorneys Gerschler and Acosta regarding Mitchell's statements. Given this "battle of the declarations," we conclude that substantial evidence supports the trial court's determination that no juror misconduct occurred. (*Barboni v. Tuomi, supra*, 210 Cal.App.4th at p. 351.)

### c. Introduction of Extraneous Law

Plaintiffs also claim juror misconduct occurred when one juror erroneously described the law as follows: "At night time, if there is a refrigerator in the road and you swerve to miss it, it wasn't because I was negligent, it was because there was a refrigerator in the freeway."

It is true that the introduction of "extraneous law [to] a jury room--i.e., a statement of law not given to the jury in the instruction by the court--" can constitute juror misconduct. (*Young v. Brunicardi* (1986) 187 Cal.App.3d 1344, 1349-1350 (*Young*); see also *In re Stankewitz* (1985) 40 Cal.3d 391, 397.) But *Young* and *Stankewitz* are distinguishable. In each of those cases, a juror "described his own outside experience as a police officer on a question of law" and "erroneously instructed his fellow jurors" as to the governing law. (*Young, supra*, at p. 1351 [comparing facts to *Stankewitz*].) Here, there is no suggestion that the juror who made the statement purported to rely on his or her professional experience.

"The jury system is an institution that is . . . fundamentally human. Jurors bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience. That they do so is one of the strengths of the jury system. It is also one of its weaknesses: it has the potential to undermine determinations that should be made exclusively on the evidence introduced by the parties and the instructions given by the court. Such a weakness, however, must be tolerated[,] .

11

. . [or] few verdicts would be proof against challenge." (*People v. Marshall* (1990) 50 Cal.3d 907, 950.) The comment at issue was "a general statement about the law that finds its source in everyday life and experience" that does not rise to the level of misconduct.[5] (*Ibid.*)

### d. Disregarding the Court's Instructions

Finally, plaintiffs argue that certain jurors committed misconduct by disregarding the court's instructions regarding the law. For this contention, plaintiffs rely on one juror's statement that "we are all negligent in our driving if this is the law," and other jurors' agreement with that statement.

It is not clear to us what "this" refers to in the juror's statement. Plaintiffs speculate "this" references the definition of negligence in the jury instructions, but without context we cannot agree. The statement is simply too vague to establish whether the jurors committed misconduct by disregarding the court's instructions.

### 2. *Sufficiency of the Evidence*

Plaintiffs also requested a new trial on the ground that there was insufficient evidence to support the jury's verdict.

### a. Standard of Review

"When a trial court rules upon a motion for a new trial made upon the ground of insufficiency of the evidence, the judge is required to weigh the evidence and judge the credibility of witnesses. . . . Nonetheless, a new trial cannot be granted '. . . unless after weighing the evidence, the court is convinced from the entire record, including reasonable inferences therefrom, *that the court or jury clearly should have reached a different verdict or decision*.' " (*Locksley v. Ungureanu* (1986) 178 Cal.App.3d 457,

_____

[5] Somewhat cryptically, plaintiffs note that some of the misinformation the police officer provided his fellow jurors in *Young* related to why the police report was not in evidence, and that the jurors here requested a copy of the police report but were told it was not in evidence. We fail to see any connection in this case between the police report and the juror statement at issue.

12

463, quoting Code Civ. Proc., § 657.) On appellate review, "this court, unlike the trial court, does not weigh the evidence; our power begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the jury's verdict." (*Locksley v. Ungureanu*, *supra*, at p. 463.) In reviewing an "order *denying* a new trial, as distinguished from an order *granting* a new trial" (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 872), where we find error we must "review[] the entire record, including the evidence, . . . [and] make an independent determination as to whether the error was prejudicial." (*Ibid*.)

### b.  Analysis

For the reasons stated above with respect to the JNOV motion, substantial evidence, in the form of defendant's testimony, supports the verdict.

### 3.  *Evidentiary Rulings*

Plaintiffs also challenge two evidentiary rulings by the trial court, which they claim entitle them to a new trial. In particular, they challenge the court's exclusion of any mention of insurance and of the police report.

### a.  Standard of Review

We review the trial court's evidentiary rulings for abuse of discretion, which we will find only where the trial court exceeded the bounds of reason. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) Given that we are reviewing a denial of a motion for a new trial, if we find the court erred in excluding evidence, we independently determine whether the error was prejudicial. (*Ajaxo Inc. v. E\*Trade Financial Corp.* (2010) 187 Cal.App.4th 1295, 1307.)

### b.  Exclusion of Any Reference to Defendant's Insurance

Plaintiffs argue that the court erred by precluding them from eliciting testimony from defendant that the individual to whom he "reported" the accident, and who told him he was not required to report it to the police, was his insurance agent. According to

13

plaintiffs, that ruling permitted jurors to incorrectly infer that some "authoritative . . . individual . . . believed [defendant's] account denying fault."

Evidence Code section 1155 prohibits the admission of evidence of insurance "to prove negligence or other wrongdoing." Plaintiffs' argument appears to be that they were not seeking to introduce the evidence to prove defendant's negligence, but rather to disprove his claim that he reasonably concluded he was not required to report the accident to police after speaking with some anonymous individual.

Assuming the trial court erred, it is plaintiffs' burden is to establish that, in the absence of the asserted error, there is a reasonable probability of a different result. (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480.) Plaintiffs' theory of prejudice is that the purported error likely caused the jury to conclude that an authoritative individual believed defendant's claim that he was not at fault for the accident, and found him not negligent as a result. This theory fails for three reasons.

First, plaintiffs established through cross-examination that the individual was not a member of law enforcement or defendant's attorney. Plaintiffs do not indicate what other "authoritative" individual the jury could have thought defendant consulted.

Second, defendant did not testify that the individual he spoke with told him he was not required to report the accident *because* he was not at fault. Indeed, it is not even clear from defendant's testimony whether he told the agent his version of how the accident occurred.[6] Therefore, there is no reason to believe the jury thought the individual concluded defendant did not cause the accident.

Third, defendant's testimony about the conversation at issue related to whether he believed he was legally required to report the accident to the police. But his belief in that

---

[6] Defendant testified as follows: "I reported that I was in an automobile accident. I gave my information and the other party refused to give their information. And they said that it was not a problem. Everything I did was legal. There was no reason to call the police or anything."

regard (and, indeed, whether he was in fact required to report) is irrelevant to whether he was negligent.

For the foregoing reasons, plaintiffs have failed to show that it is reasonably probable that if the trial court had admitted evidence that defendant's conversation was with his insurance agent the jury would have returned a different verdict as to defendant's liability.

### c. Exclusion of the Police Report

Plaintiffs also claim the court erred by excluding the police report, but they advance no argument as to (1) why the exclusion constituted error or (2) how it caused them prejudice. Accordingly, we treat the argument as abandoned. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119 [" ' " 'Contentions supported neither by argument nor by citation of authority are deemed to be without foundation, and to have been abandoned.' " ' "].)

### D. *Denial of Motion to Strike or Tax Expert Witness Fees*

Section 998 is a cost-shifting statute designed to encourage pretrial settlements and avoid needless litigation. (*Barba v. Perez* (2008) 166 Cal.App.4th 444, 451.) It provides that "[i]f an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." (§ 998, subd. (c)(1).) To be valid, a section 998 offer must be made in good faith, which requires that the offer of settlement be " 'realistically reasonable under the circumstances of the particular case.' " (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262.) " 'Normally, therefore, a token or nominal offer will not satisfy this good faith requirement.' " (*Ibid.*)

15

Here, defendant made a $6,501 pretrial settlement offer to Mr. Jones and a $501 pretrial settlement offer to Mrs. Jones. On the basis of those offers, the court awarded defendant expert witness fees from plaintiffs under section 998. Plaintiffs argue that the court erred in doing so because defendant's settlement offers were not made in good faith.

### 1. *Standard of Review*

"As a general rule, the reasonableness of a defendant's offer is measured, first, by determining whether the offer represents a reasonable prediction of the amount of money, if any, defendant would have to pay plaintiff following a trial, discounted by an appropriate factor for receipt of money by plaintiff before trial, all premised upon information that was known or reasonably should have been known *to the defendant*. . . . [¶] If the offer is found reasonable by the first test, it must then satisfy a second test: whether defendant's information was known or reasonably should have been known to plaintiff. This second test is necessary because the section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one." (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699, fn. omitted.) "Where, as here, the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998. The burden is therefore properly on plaintiff[s], as offeree[s], to prove otherwise." (*Id*. at p. 700.) We review the trial court's determination that a section 998 offer was reasonable and made in good faith for abuse of discretion. (*Elrod v. Oregon Cummins Diesel, Inc.*, *supra*, at p. 700.)

### 2. *The Trial Court Did Not Abuse its Discretion in Awarding Expert Costs to Defendant Under Section 998*

Plaintiffs contend defendant's offers were unreasonable in view of Mr. Jones's high medical bills (which exceeded $55,000), and the fact that defendant made the offers before the defense conducted its medical examination of Mr. Jones. We conclude

plaintiffs have not met their burden of showing that the trial court exercised its discretion in "an arbitrary, capricious or patently absurd manner." (*Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 710 (*Culbertson*).)

The amount of the offer is only one factor for the trial judge to consider in determining reasonableness and good faith. A defendant is entitled to make a "modest settlement offer," even if substantial damages are claimed, based on his perception that he has a strong case. (*Culbertson*, *supra*, 190 Cal.App.3d at p. 710.) Furthermore, "the mere fact" that a plaintiff claimed large losses "does not mean that defendants' . . . offer was unreasonable or unrealistic." (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 118.) Here, the trial court found the offers--which totaled $7,002--to be reasonable based on the fact that defendant had strenuously denied negligence and causation throughout the litigation. This was not an abuse of discretion. (See *Colbaugh v. Hartline* (1994) 29 Cal.App.4th 1516, 1528-1529 [" 'When a defendant perceives himself to be fault free and has concluded that he has a very significant likelihood of prevailing at trial, it is consistent with the legislative purpose of section 998 for the defendant to make a modest settlement offer.' "].)

Nor does the fact that the defense had not yet examined Mr. Jones at the time the offers were made render them unreasonable. Again, defendant believed himself to be fault free, which makes his modest settlement offers reasonable regardless of the true extent of Mr. Jones's injuries. And the fact that the defense had not completed that discovery had no impact on plaintiffs' ability to evaluate the offers.

17

## III.  DISPOSITION

The judgment and order on the motion to tax costs are affirmed.  Defendant shall recover his costs on appeal.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

18